# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP208-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |    v. |
| | Johnny K. Pinder, |
| |         Defendant-Appellant. |

ON CERTIFICATOIN FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | November 16, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 7, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Ozaukee |
|   JUDGE: | Paul V. Malloy |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | Kelly, J., concurs, joined by R.G. Bradley, J. |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant, there were briefs filed by *Mark S. Rosen* and *Rosen and Holzman*, *Ltd.*, Waukesha. There was an oral argument by *Michael Holzman*.

For the plaintiff-respondent, there was a brief filed by *Misha Tseytlin*, solicitor general, with whom on the brief were *Brad D. Schimel*, attorney general, and *Kevin M. LeRoy*, deputy solicitor general. There was an oral argument by *Luke Berg*, deputy solicitor general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP208-CR
(L.C. No. 2015CF84)

STATE OF WISCONSIN   :   IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Johnny K. Pinder,**

    **Defendant-Appellant.**

**FILED**

**NOV 16, 2018**

Sheila T. Reiff
Clerk of Supreme Court

---

APPEAL from a judgment of the Circuit Court. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This case is before the court on certification from the court of appeals, pursuant to Wis. Stat. § 809.61 (2015-16).[1] The court of appeals certified the following question:

> If a search warrant issued under Wis. Stat. § 968.12 for the placement and use of a GPS tracking device on a motor vehicle is not executed within five days after the date of issuance per Wis. Stat. § 968.15(1) is the warrant void under § 968.15(2), even if the search was otherwise reasonably conducted?

---

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

In short, this question requires the court to decide if an otherwise reasonably conducted search warrant issued for the placement and use of a Global Positioning System ("GPS") tracking device on a motor vehicle is subject to Wis. Stat. §§ 968.15[2] and 968.17(1).[3]

¶2 We conclude that a search warrant issued for the placement and use of a GPS tracking device on a motor vehicle, but not executed within five days after the date of issuance per Wis. Stat. § 968.15 or timely returned under Wis. Stat. § 968.17(1), is not void if the search was otherwise reasonably conducted, because it is not a warrant issued "for the purpose of seizing designated property or kinds of property" under Wis. Stat. § 968.12(1). It is not a warrant that seeks a "document" or "electronic data" under the control of the vehicle owner as is required under Wis. Stat. § 968.13 and thus, is not subject to the execution and return provisions of §§ 968.15 and 968.17(1). Such a warrant for GPS tracking is not issued pursuant to a statute, but instead is issued pursuant to the court's inherent authority and thus, must comply only with the

---

[2] Wisconsin Stats. § 968.15, "Search warrants; when executable," provides: "(1) A search warrant must be executed and returned not more than 5 days after the date of issuance" and "(2) Any search warrant not executed within the time provided in sub. (1) shall be void and shall be returned to the judge issuing it."

[3] Wisconsin Stats. § 968.17(1), "Return of search warrant," states, in relevant part, that "the return of a search warrant shall be made within 48 hours after execution."

Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution. Because the GPS warrant in this case was otherwise constitutionally sufficient, the evidence obtained as a result of the warrant is not subject to suppression. Therefore, we affirm the circuit court.[4]

## I. FACTUAL BACKGROUND

¶3 In February of 2015, multiple businesses were burglarized in Mequon, Wisconsin. Detective Cory Polishinski of the Mequon Police Department ("Detective Polishinski") was in charge of investigating these burglaries. The burglar stole laptop computers, a "SimCube testing device," a stereo, a company MasterCard credit card, and cash. Surveillance cameras near one business captured footage of a potential suspect and his car, a silver Chevrolet Impala. The license plates appeared to be missing. MasterCard confirmed that the stolen credit card "had five ATM attempts to get cash advances" and that it was used on or about February 14, 2015, at multiple gas stations in Milwaukee, Wisconsin. Surveillance cameras at two of these gas stations captured footage of the suspect burglar, in what appeared to be the same silver Chevrolet Impala, filling up other vehicles with gasoline.

---

[4] We recognize Pinder also argued that his trial counsel was ineffective for other reasons. Strickland v. Washington, 466 U.S. 668 (1984). As a result, we later address this secondary argument and, as will be seen, conclude that counsel was not ineffective.

¶4 On February 19, 2015, Detective Polishinski received an e-mail from Detective Brad Mellenthein of the Milwaukee Police Department ("Detective Mellenthein"). In his e-mail, Detective Mellenthein provided pertinent information he received from a confidential informant. According to Detective Mellenthein, the informant said that a man named "JP," who is "a really good lock picker," was "using his skills to get into locked areas of hospitals and businesses to steal computers, credit cards, and money . . . to support his crack habit." JP bragged to the informant that he would "pick the lock of a business and enter to take the items he wanted, then leave things like they were prior to the burglary, giving him time to move the product or use the credit or gas cards." The informant described JP as having "a bunch of gas cards and [using the cards to] fill up vehicles," as well as having "10 to 15 computers available at one time to sell." In fact, JP sold one of the stolen computers to the confidential informant's aunt (the computer had one of the burglarized company's stickers on it) and, after it stopped working, JP agreed to "get her another one." The informant also stated that JP just "got out [of prison] about two months ago" after serving 18 years.

¶5 Detective Mellenthein was able to identify JP as Johnny K. Pinder ("Pinder"). According to Detective Mellenthein, Pinder was the known owner of a "2008 Chevrolet Impala LT, silver in color with tinted windows and . . . a WI temp plate (L6019F) in the front window," VIN 2G1WT58N089144205 (hereinafter "Pinder's vehicle"); Pinder had been in prison for

4

burglary and was released in December of 2014; Pinder was currently on probation; and the Milwaukee Police Department confirmed Pinder was a suspect in other similar burglaries using the Chevrolet Impala. In addition, surveillance footage of these other similar burglaries showed Pinder and an unknown female "inside an office taking items."

¶6 On February 27, 2015, Detective Polishinski applied to the Ozaukee County circuit court for an order to covertly place and monitor a GPS tracking device on Pinder's vehicle "for a period of time not to exceed 60 days from the date the order is signed." Detective Polishinski's affidavit in support of the GPS warrant articulated the above-referenced details of the investigation and outlined his training and experience with respect to criminal investigations. In his affidavit, Detective Polishinski acknowledged that, "Wisconsin has no explicit statute under chapter 968 that addresses the issue of installing tracking devices on private property." Detective Polishinski nonetheless detailed how the device would be installed and monitored, and that "the use of power to run the [GPS] tracking device [would] be taken from [Pinder's vehicle] in order to extend the useful monitoring of [Pinder's vehicle]," and enable police "to identify locations and associates currently unknown . . . as to the location of the fruits or accomplices of this violation." Detective Polishinski further explained in his affidavit that a GPS tracking device "periodically records, at specified times, the latitude, longitude, date and time of readings and stores these readings until they are downloaded to

5

a computer . . . for analysis." Detective Polishinski further stated:

> [T]here is probable cause to believe, based upon information [contained in his affidavit] that [Pinder's vehicle] is presently being utilized in the commission of a crime, to wit, Burglary in violation of Chapter 943.10 of the Wisconsin Statutes [and] that there is probable cause to believe that the installation of a [GPS] tracking device on [Pinder's vehicle] in conjunction with the monitoring, maintenance and retrieval of information from that [GPS] tracking device, will lead to evidence of the aforementioned criminal violations, as well as the location where the fruits of the violations are being stored and the identification of associates assisting in the aforementioned violations.

¶7 On the same day, the Ozaukee County circuit court[5] granted Detective Polishinski's application with a signed warrant entitled "Order" (hereinafter "Warrant"). The circuit court concluded that there was "probable cause to believe that the installation of a tracking device in [Pinder's vehicle] is relevant to an ongoing criminal investigation and that the vehicle is being used in the commission of the crime of Burglary." The circuit court authorized the State (the Mequon Police Department) to

> place an electronic tracking device on [Pinder's vehicle], and . . . surreptitiously enter and re-enter the vehicle and any buildings and structures containing the vehicle or any premises on which the vehicle is located to install, use, maintain and conduct surveillance and monitoring of the location and movement of a mobile electronic-tracking device in the vehicle and any and all places within or outside

---

[5] The Honorable Paul V. Malloy presided.

6

the jurisdiction of Ozaukee County, including but not limited to private residences and other locations not open to visual surveillance; to accomplish the installation agents are authorized to obtain and use a key to operate and move the vehicle for the required time to a concealed location and are authorized to open the engine compartment and trunk areas of the vehicle to install the device.

¶8 The Warrant did not require the Mequon Police Department to install the GPS tracking device within a certain time period, but rather mandated that the tracking device be removed "as soon as practicable after the objectives of the surveillance are accomplished or not later than 60 days from the date the order is signed."

¶9 On March 9, 2015, ten days after the circuit court signed the Warrant, Detective Polishinski installed the GPS tracking device on Pinder's vehicle.[6] The GPS tracking device was programmed to alert the Mequon Police Department when the vehicle entered Mequon.[7]

¶10 On March 14, 2015, Detective Polishinski received an alert that Pinder's vehicle had entered Mequon. Detective

---

[6] The record does not contain details about how the GPS tracking device was installed.

[7] Detective Polishinski explained:

Once the GPS is placed on the vehicle a geofence is established. In this case the geofence was surrounding the City of Mequon. So if a vehicle would enter or cross the geofence, an alert would be active; and myself, along with other detectives and our captain would receive a text message and an e-mail stating that the vehicle had crossed at a specific point on that geofence.

7

Polishinski logged onto the GPS website and monitored the GPS tracking device's signal.[8] The signal indicated that Pinder's vehicle had stopped at a business office complex in Mequon.

¶11 Detective Polishinski requested that police officers respond to the business office complex to investigate a possible burglary there. Police officers arrived at the business office complex and ascertained that someone had broken into one suite of offices. Shortly thereafter, the officers confirmed that a wallet and two laptops were missing, including a new computer that was still in the original box.

¶12 Mequon police officers also stopped the suspect vehicle (Pinder's vehicle) on the highway. The occupants of the vehicle were identified as Pinder and Darnelle Polk ("Polk"). Officers obtained consent to search the vehicle. The officers found gloves, screwdrivers, "portfolio items,"[9] items stolen from the burglary scene including a laptop computer box, a wallet, and drug paraphernalia.

---

[8] Detective Polishinski explained:

[Once he] logged onto the GPS website . . . [he] was able to view a representation of that vehicle. On that website a map of the area will pop up; and the GPS is a little dot, and you're able to follow the dot as it is driving along the roadway; or if it stops, you're able to find out exactly where on the map it is.

[9] The portfolio contained "a hammer-type device," a "metal tool with an orange handle," and a laptop.

¶13 Pinder and Polk, as well as Pinder's vehicle, were then transported to the Mequon Police Department.[10] At the station "lock-picking style tools" were found on Pinder.

¶14 Surveillance video footage from the business office complex provided further evidence that Pinder was likely the burglar. The footage reflected that Pinder's vehicle was at the business office complex, that Pinder was dressed like and fit the description of the suspect, and that the suspect was carrying "a portfolio" much like the one found in Pinder's vehicle which contained burglarious tools.

## II. PROCEDURAL POSTURE

¶15 On March 16, 2015, the State filed a criminal complaint charging Pinder with one count of burglary of a building or dwelling – as a party to a crime, contrary to Wis. Stat. §§ 943.10(1m)(a), 939.50(3)(f), and 939.05; and one count of possession of burglarious tools, contrary to Wis. Stat. §§ 943.12 and 939.50(3)(i).[11]

---

[10] Detective Polishinski then applied for and received a search warrant under Wis. Stat. § 968.12 for the vehicle and took the items contained therein into evidence.

[11] Pinder, along with Polk, were both charged in the initial criminal complaint. The subsequent information, charging Pinder with the same two charges and using the same charging language, only contained the counts against Pinder. The initial criminal complaint charged Polk with one count of burglary of a building or dwelling – as a party to a crime, contrary to Wis. Stat. §§ 943.10(1m)(a), 939.50(3)(f), and 939.05; and one count of possession of drug paraphernalia, contrary to Wis. Stat. § 961.573(1).

9

¶16 On September 14, 2015, Pinder filed a motion to suppress on the basis that the "Order obtained by the State in this case [was] not a search warrant and thus, the attachment of a GPS device to [Pinder's vehicle] was a warrantless search." Pinder further argued that, if the order is a warrant, the Warrant was not properly executed pursuant to Wis. Stat. § 968.15(1). In response, the State argued that the Warrant was not a statutory search warrant under Wis. Stat. § 968.12, but instead was a warrant that satisfied the Warrant Clause of the Fourth Amendment, because it had:

> (1) prior authorization of by (sic) a neutral and detached magistrate, (2) a demonstration upon oath or affirmation that there is probable cause to believe the evidence sought will aid in a particular conviction for [a] particular offense, and (3) a particularized description of the place to be searched and the items to be seized.

¶17 On November 9, 2015, the circuit court held a hearing on Pinder's motion to suppress.[12] On November 23, 2015, the circuit court denied the motion to suppress, concluding that Sveum[13] is "on point," and that Sveum's reasoning "controls" in this case. In applying Sveum's test to determine whether the Warrant was valid, the circuit court found that the court "qualif[ied] as a detached and neutral magistrate in issuing the

---

[12] At the hearing, the State and Pinder stipulated that the GPS tracking device was installed ten days after the Warrant was signed.

[13] State v. Sveum, 2010 WI 92, 328 Wis. 2d 369, 787 N.W.2d 317.

10

warrant" and that the probable cause standard was satisfied based on the facts in Detective Polishinski's affidavit. The circuit court added that Pinder's vehicle was "[k]ind of the linchpin" of the "rash of burglaries," and that the Warrant allowed the Mequon Police Department to "[observe] the vehicle when it was in the area where these burglaries had been committed." While the circuit court acknowledged that Wis. Stat. § 968.15 presented "difficulties," it nonetheless concluded that——just as in Sveum——the "constitutional test appl[ies] over the statutory requirements." The circuit court concluded that, "under the circumstances . . . the warrant was appropriate" and denied the motion to suppress.

¶18 On November 30, 2015, Pinder and Polk were tried before a jury. Before both sides rested, Pinder moved for a directed verdict on the burglary charge arguing that the State had charged Pinder under the wrong paragraph of Wis. Stat. § 943.10(1m). In response, the State moved to amend its pleadings to charge burglary under § 943.10(1m)(f) instead of § 943.10(1m)(a).[14] The circuit court denied Pinder's motion and

---

[14] Wisconsin Stat. § 943.10, "Burglary," in relevant part, provides:

> (1m) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class F felony:
>
> (a) Any building or dwelling; or
>
> . . .

(continued)

11

granted the State's motion. After granting the State's motion, the circuit court explained that it had changed the term "building," as well as "dwelling," to "office" throughout the Burglary jury instructions. The circuit court, however, failed to change "building" to "office" one time, resulting in the Burglary jury instructions containing the word "building" once. The circuit court attributed it to an editing mistake. The State had requested the Burglary jury instructions use the phrase "room within a building." No one objected to the jury instructions. The jury found Pinder guilty on both counts.[15]

¶19 On December 1, 2015, the circuit court sentenced Pinder to five years of initial confinement and five years of extended supervision on count 1, and one year of initial confinement and one year of extended supervision on count 2, to be served concurrently to the sentence imposed on count 1. Both sentences were to be served consecutively to a sentence Pinder was serving at the time.

¶20 On August 24, 2016, Pinder filed a motion for postconviction relief seeking a new jury trial on the ground that his "trial attorney . . . was prejudicially ineffective."

---

(f) A room within any of the above.

§ 943.10(1m)(a), (f).

[15] The jury, however, found Polk "not guilty of burglary of an office as a party to the crime as charged in . . . the information." He, nonetheless, was found guilty of possession of drug paraphernalia, contrary to Wis. Stat. § 961.573(1).

12

On January 19, 2017, the circuit court issued its decision denying the motion. After noting that Pinder "might be able to meet the first prong of the test [of an ineffective assistance of counsel claim]," the circuit court concluded that "[i]t is clear beyond a reasonable doubt that the jury would have convicted [Pinder] . . . if proper instructions had been given." The circuit court reasoned that "the quantum of evidence was [so] overwhelming that the jury would have convicted [Pinder] of the charges" and that the "jury didn't seem to have any confusion."

¶21 On February 2, 2017, Pinder filed a notice of appeal, challenging both the judgment of conviction and the circuit court's denial of his postconviction motion. On December 13, 2017, the court of appeals certified the case to this court regarding the application of provisions of Chapter 968 to this Warrant. On March 14, 2018, we accepted the court of appeals' certification.

III. STANDARD OF REVIEW

¶22 The certified issue concerns whether the Warrant in this case is governed by Wisconsin Statutes Chapter 968. Accordingly, we are called upon to consider various provisions of Chapter 968 including Wis. Stat. §§ 968.12, 968.13, 968.15, and 968.17.

¶23 Statutory interpretation is a question of law that we review de novo but benefiting from prior courts' analyses. C. Coakley Relocation Sys., Inc. v. City of Milwaukee, 2008 WI 68, ¶14, 310 Wis. 2d 456, 750 N.W.2d 900. "[T]he purpose of

statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶24 We are then called upon to review whether this Warrant complied with the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution. "Whether the language of the warrant satisfies the requisite constitutional requirements is a question of law. We review such issues of constitutional guarantees de novo." State v. Meyer, 216 Wis. 2d 729, 744, 576 N.W.2d 260 (1998); see also State v. Sveum, 2010 WI 92, ¶17, 328 Wis. 2d 369, 787 N.W.2d 317. "However, we review a warrant-issuing magistrate's determination of whether the affidavit in support of the order was sufficient to show probable cause with 'great deference.'" State v. Tate, 2014 WI 89, ¶14, 357 Wis. 2d 172, 849 N.W.2d 798 (quoting State v. Higginbotham, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991)). This "determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause." Higginbotham, 162 Wis. 2d at 989.

¶25 When we analyze whether police conduct violated the Fourth Amendment to the United States Constitution's and Article I, Section 11 of the Wisconsin Constitution's guarantees against unreasonable searches, "[w]e independently review 'whether police conduct violated the constitutional guarantee against unreasonable searches,' which presents a question of

constitutional fact." Tate, 357 Wis. 2d 172, ¶14 (quoting State v. Arias, 2008 WI 84, ¶11, 311 Wis. 2d 358, 752 N.W.2d 748). "When presented with a question of constitutional fact, this court engages in a two-step inquiry. First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." State v. Robinson, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463 (citations omitted).

¶26 Finally, with respect to Pinder's ineffective assistance of counsel argument, review of "[w]hether a defendant was denied effective assistance of counsel is a mixed question of law and fact." State v. Breitzman, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93, cert. denied, 138 S. Ct. 1599 (2018). "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." Id. "To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial." Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "To establish that counsel's performance was deficient, the defendant must show that it fell below 'an objective standard of reasonableness.' In general, there is a strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional

15

assistance.'" Id., ¶38 (citation omitted). "To establish that deficient performance was prejudicial, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id., ¶39. Whether trial counsel performed deficiently and whether any deficient performance was prejudicial are both questions of law we review de novo. Id., ¶¶38-39. "If the defendant fails to satisfy either prong, we need not consider the other." Id., ¶37 (citing Strickland, 466 U.S. at 697).

## IV. ANALYSIS

### A. Wisconsin Statutes Chapter 968 Does Not Apply.

¶27 The crux of the issue before the court begins with an analysis of certain provisions of Chapter 968 of the Wisconsin Statutes. We are first called upon to determine whether this Warrant must be issued, executed, and returned pursuant to the provisions of Chapter 968. Because the plain language of the provisions of Chapter 968 neither addresses nor includes such a GPS warrant, we conclude that this Warrant cannot be subject to the statutory limitations and requirements therein. See Wis. Stat. §§ 968.12, 968.13, 968.15, and 968.17.

¶28 This court begins statutory interpretation with the language of the statute. Kalal, 271 Wis. 2d 633, ¶45. If the meaning of the statute is plain, we ordinarily stop the inquiry and give the language its "common, ordinary, and accepted meaning, except that technical or specially-defined words or

16

phrases are given their technical or special definitional meaning." Id.

¶29 Context and structure of a statute are important to the meaning of the statute. Id., ¶46. "Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. Moreover, the "[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." Id. "A statute's purpose or scope may be readily apparent from its plain language or its relationship to surrounding or closely-related statutes——that is, from its context or the structure of the statute as a coherent whole." Id., ¶49.

¶30 "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." Id., ¶46. If statutory language is unambiguous, we do not need to consult extrinsic sources of interpretation. Id.

¶31 This case requires us to begin with an interpretation of Wis. Stat. § 968.12(1) which addresses, in part, the purpose of a statutory search warrant,[16] and Wis. Stat. § 968.13 which

---

[16] Although Chapter 968 of the Wisconsin Statutes describes several categories of warrants, in this opinion, we use "statutory search warrant" to refer only to warrants issued pursuant to Wis. Stat. § 968.12(1).

17

addresses what property is subject to seizure because of a statutory search warrant.

¶32 Wisconsin Stat. § 968.12, "Search warrant," provides, in pertinent part:

> (1) Description and issuance. A search warrant is an order signed by a judge directing a law enforcement officer to conduct a search of a designated person, a designated object or a designated place for the purpose of seizing designated property or kinds of property. A judge shall issue a search warrant if probable cause is shown.

§ 968.12(1) (emphasis added).

¶33 Initially, under the plain language interpretation of Wis. Stat. § 968.12(1), statutory search warrants are "for the purpose of seizing designated property or kinds of property." Id. (emphasis added). A GPS tracking device does not seize property, it creates data. See United States v. Jones, 565 U.S. 400, 419 (2012) (Alito, J., concurring) ("The Court does not contend that there was a seizure [from the attachment or use of the GPS device]. A seizure of property occurs when there is 'some meaningful interference with an individual's possessory interests in that property,' and here there was none." (citation omitted)); see also id. at 415 (Sotomayor, J., concurring) ("GPS monitoring generates a precise, comprehensive record of a person's public movements." (emphasis added)); see also United States v. Karo, 468 U.S. 705, 718 (1984). We cannot ignore this clear legislative pronouncement that the statutory search warrant be for the "purpose of seizing designated property or kinds of property." See § 968.12(1); see also Kalal, 271

18

Wis. 2d 633, ¶46 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174-79 (2012) ("If possible, every word and every provision is to be given effect (verba cum effectu sunt accipienda). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." (footnote omitted)). Instead, "[w]e must assume that the legislature has reviewed the legislation and that it intends the words used be given their meaning." State v. MacArthur, 2008 WI 72, ¶30, 310 Wis. 2d 550, 750 N.W.2d 910; see also 2A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 46.6 (7th ed. 2018) ("Courts assume that every word, phrase, and clause in a legislative enactment is intended and has some meaning and that none was inserted accidentally."). If the legislature intended that § 968.12 search warrants be required for other than the seizure of "property," it would have selected different words. The plain meaning of § 968.12 does not support Pinder's argument.

¶34 Further support for the conclusion that Wis. Stat. § 968.12 does not apply to GPS warrants is found in the plain language of Wis. Stat. § 968.13, which specifically defines "the property" that may be seized by a statutory search warrant. Information subsequently generated from a GPS tracking device is not "property" that can be "seized" at the time the warrant

19

issued. Moreover, it is not "property" that is under the control of Pinder.

¶35 Wisconsin Stat. § 968.13, "Search warrant; property subject to seizure," provides:

> A search warrant may authorize the seizure of the following: . . .
>
> (d) Documents which may constitute evidence of any crime, if probable cause is shown that the documents are under the control of a person who is reasonably suspected to be concerned in the commission of that crime under s. 939.05(2).

§ 968.13(1)(d) (emphasis added). Subsection (2) of Wis. Stat. § 968.13 defines documents as including but not limited to, "books, papers, records, recordings, tapes, photographs, films or computer or electronic data." § 968.13(2).

¶36 Pinder argues that GPS warrants authorize the seizure of "[d]ocuments," specifically "electronic data," under Wis. Stat. § 968.13(1)(d). Pinder's argument, however, fails because a document/electronic data is not even in existence at the time the GPS unit is installed. Moreover, this not-yet-created information could not possibly be "under the control of" Pinder so to be seized from him.

¶37 Simply stated, Wis. Stat. § 968.13(1)(d) requires that the property to be seized be "under the control of a person who is reasonably suspected to be concerned in the commission of that crime." GPS tracking devices may create data in the future, but that data is not under the control of Pinder. To the extent that a document or data might come into existence eventually because of the tracking, it would be created by the

20

Mequon Police Department and is under the Mequon Police Department's control, not Pinder's.

¶38 To the extent that Pinder's argument that a future electronic transmission from a GPS tracking device is "electronic data" under his control as the term is used in Wis. Stat. § 968.13(2), the other terms of the statute demonstrate that the term "documents" pertains to documents already in existence and "electronic data" must be considered in context. Section 968.13(2) defines documents to include but is not limited to "books, papers, records, recordings, tapes, photographs, films or computer or electronic data." The canon of noscitur a sociis instructs that "an unclear statutory term should be understood in the same sense as the words immediately surrounding or coupled with it." Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶40, 270 Wis. 2d 318, 677 N.W.2d 612; Scalia & Garner, supra ¶33, at 195-98. Under this canon, "electronic data" should be understood in the same sense as the other enumerated "documents." See, e.g., Book, Webster's Third New International Dictionary 252 (1976) (defining "book" as "a formal written document" or "a collection of written, printed, or blank sheets fastened together"); record, id. at 1898 (defining "record" as "evidence, knowledge, or information remaining in permanent form (as a relic, inscription, document)" or "an account in writing or print (as in a document)"); recording, id. (defining "recording" as "a phonograph record, magnetic tape, or some other thing (as film, wire, one of the perforated rolls played by a player piano) on which sound or

21

visual images have been recorded for subsequent reproduction"). Read in conjunction with the other types of "documents," it is evident that "electronic data" under this statute would be more akin to stored documents, music, pictures or videos, not future electronic transmissions from a GPS tracking device that are in the possession of the Mequon Police Department, not Pinder. Instead, if there might eventually be a document containing GPS information, it will come into existence at the behest of and belong to the Mequon Police Department, and is not something under the control of Pinder.

¶39 Finally, the parties argue about how, if at all, Sveum, 328 Wis. 2d 369, informs our analysis. While it is true that Sveum cites to the search warrant statutes in its reasonableness analysis and considers a warrant to also be an order, the court in Sveum concluded that suppression is not the remedy for what it determined was a technical irregularity. Sveum, 328 Wis. 2d 369, ¶¶57-58. The arguments in Sveum centered around the Fourth Amendment. In Sveum the court engaged in a Fourth Amendment reasonableness analysis and turned to the Wisconsin Statutes for further validation that the search warrant was constitutional. While Sveum does establish that a court has inherent authority to issue a GPS warrant, it does not conclude that GPS warrants must be issued under and otherwise comply with Wisconsin Statutes Chapter 968.

¶40 The facts of Sveum were different and the parties' arguments were other than they are here. In Sveum the parties neither briefed nor argued whether the warrant was a common law

22

warrant.  Sveum in part argued that the "[t]he court order also failed requirements of Ch. 968 of the Wisconsin Statutes," and the court determined that to the extent there was a departure from Wis. Stat. § 968.15(1), it was a "technical irregularity." Id., ¶57.

¶41 As a result, Sveum is far from precedent that GPS warrants are controlled by Chapter 968.  Instead, Sveum supports the conclusion that courts have the authority to issue GPS warrants even though a technical irregularity is present under the statute.

¶42 Therefore, we conclude that the plain meaning of Wis. Stat. §§ 968.12(1) and 968.13 foreclose the argument that GPS warrants must comport with Wisconsin Statutes Chapter 968. Those statutes clearly do not apply to GPS warrants, and therefore GPS warrants are not subject to the requirements of Wis. Stat. §§ 968.15 or 968.17(1).  However, we again take this opportunity to urge the legislature to consider enacting a specific statutory grant of authority to define parameters and requirements with respect to GPS warrants.  See Fed. R. Crim. P. 41;[17] see also State v. Brereton, 2013 WI 17, ¶54 n.16, 345

---

[17] Rule 41, Federal Rules of Criminal Procedure, "Search and Seizure," in relevant part, provides:

> (C)  Warrant for a Tracking Device. A tracking-device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used. The time must not exceed 45 days from the date the warrant was issued. The court may, for good cause, grant one or more

(continued)

Wis. 2d 563,  826  N.W.2d 369;  id.,  ¶98  (Abrahamson, C.J., dissenting);  Sveum,  328  Wis. 2d 369,  ¶77  (Crooks, J., concurring);  id.,  ¶¶81-82, 84 (Ziegler, J., concurring);  id., ¶126  (Abrahamson, C.J., dissenting).  Had the legislature enacted such a statute, we may very well not be confronted with the issues now present.

B.  Fourth Amendment

¶43  We now turn to the court's authority to issue a GPS warrant and whether this Warrant complies with Fourth Amendment principles.  Because no statutes control the issuance of a GPS warrant, a court is left to rely on its inherent authority.  See Tate, 357 Wis. 2d 172, ¶42 (citing Sveum, 328 Wis. 2d 369, ¶¶69-72);  Meek v. Pierce,  19 Wis. 318 (*300),  321-22 (*302-03) (1865);  United States v. Falls,  34 F.3d 674, 678 (8th Cir. 1994);  United States v. Torres,  751 F.2d 875, 879 (7th Cir. 1984);  United States v. Villegas,  899 F.2d 1324, 1334 (2d Cir.

---

extensions for a reasonable period not to exceed 45 days each. The warrant must command the officer to:

(i) complete any installation authorized by the warrant within a specified time no longer than 10 days;

(ii) perform any installation authorized by the warrant during the daytime, unless the judge for good cause expressly authorizes installation at another time; and

(iii) return the warrant to the judge designated in the warrant.

Fed. R. Crim. P. 41(e)(2)(C).

1990). Several courts have considered this issue, including ours, and have concluded that courts do indeed have the inherent authority to issue warrants at common law. Tate, 357 Wis. 2d 172, ¶42 (citing Sveum, 328 Wis. 2d 369, ¶¶69-72) ("No specific statutory authority is necessary to the issuance of a valid warrant . . . ."); Meek, 19 Wis. at 321-22 (*302-03) ("It is clear that at common law a justice of the peace had a right to direct his warrant to any particular private person by name. This authority extended as well to search warrants as others. . . . With us, therefore, the only question is, whether this common law power has been restrained or taken away by statute. For when the statute authorizes a magistrate to issue a warrant in a proceeding for crime, the presumption is that he may do so in the manner authorized by the common law, unless a different mode is prescribed by the statute. . . . It is a safe and established principle in the construction of statutes, that the rules of the common law are not to be changed by doubtful implication. To give such effect to the statute, the language must be clear, unambiguous and peremptory." (citations omitted)); Falls, 34 F.3d at 678 ("A court of general jurisdiction has inherent power to issue a search warrant within the limits set forth in the Fourth Amendment. Although Congress can limit the procedural power of the federal courts, federal courts retain their traditional powers until Congress chooses to limit them with respect to a particular subject." (citation omitted)); Torres, 751 F.2d at 879 ("The power to issue a search warrant is a common law power in America as well as England, and

in the federal system as well as in the states." (citations omitted)); Villegas, 899 F.2d at 1334 ("Given the Fourth Amendment's warrant requirements, and assuming no statutory prohibition, the courts must be deemed to have inherent power to issue a warrant when the requirements of that Amendment are met.").

¶44 Pinder makes little, if any, argument that a court lacks such authority. His argument instead focused on this Warrant's failure to comply with the above-referenced search warrant statutes. Furthermore, Pinder's counsel at oral argument conceded that common law warrants are valid "in certain situations."[18] However, because we have concluded that Wisconsin Statutes Chapter 968 does not control the issuance of a GPS warrant and we rely on the inherent authority of courts to issue such warrants, we now turn to whether the Warrant complies with Fourth Amendment protections.

---

[18] Pinder's counsel's full statement was: "They are trying to create a new kind of warrant, a common law warrant, which they can do in certain situations, but is not necessary in this situation." He further conceded that this authority was used in Tate:

> In Tate, there was-- they got the information from somebody, AT&T, who was not suspected of a crime, okay, which is not what is provided in Wisconsin Statutes. Because you have to have someone suspected of a crime in order to have a valid warrant. So they couldn't go through the warrant provisions, so they created this common law situation to avoid having to go through the statutory procedures for a warrant. You don't have to do that in this case.

26

¶45 The "touchstone of the Fourth Amendment is reasonableness." State v. Faust, 2004 WI 99, ¶32, 274 Wis. 2d 183, 682 N.W.2d 371. The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; Wis. Const. art. 1, § 11.[19] "A warrantless search is presumptively unreasonable . . . ." State v. Tullberg, 2014 WI 134, ¶30, 359 Wis. 2d 421, 857 N.W.2d 120 (citing State v. Henderson, 2001 WI 97, ¶17, 245 Wis. 2d 345, 629 N.W.2d 613).

---

[19] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Wisconsin Constitution's search and seizure provision is "interpret[d] . . . consistent[ly] with the United States Supreme Court's interpretation of the Fourth Amendment." State v. Tullberg, 2014 WI 134, ¶29 n.17, 359 Wis. 2d 421, 857 N.W.2d 120 (citing State v. Robinson, 2010 WI 80, ¶24 n.11, 327 Wis. 2d 302, 786 N.W.2d 463); but see State v. Eason, 2001 WI 98, 245 Wis. 2d 206, 629 N.W.2d 625. Article I, Section 11 of the Wisconsin Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

27

¶46  "Whether a search and seizure pursuant to a warrant is constitutionally valid is a two-part inquiry.  First, the Warrant Clause demands that all warrants be validly issued. Second, the Reasonableness Clause requires that warrants be reasonably executed."  Sveum, 328 Wis. 2d 369, ¶19 (citation omitted).

¶47 Pinder's argument focuses on this Warrant's lack of compliance with the warrant statutes.  The State argues that the search[20] pursuant to the Warrant complied with Fourth Amendment requirements.  We agree with the State.

### 1.  Warrant Clause

¶48  "The      Fourth      Amendment's      warrant      clause provides . . . particularized protections governing the manner in which search and arrest warrants are issued." Henderson, 245 Wis. 2d 345, ¶19.  For a warrant to be validly issued, the Warrant Clause requires three things.  Sveum, 328 Wis. 2d 369, ¶20.

---

[20] The  installation  and  monitoring  of  the  GPS  tracking device  on  Pinder's  vehicle  constituted  a  Fourth  Amendment "search."  United States v. Jones, 565 U.S. 400, 404 (2012) (footnote omitted) ("We hold that the Government's installation of  a  GPS  device  on  a  target's  vehicle,  and  its  use  of  that device  to  monitor  the  vehicle's  movements,  constitutes  a 'search.'").

¶49 First, the warrant must have "prior authorization by a neutral, detached magistrate."  Id.  No argument is made that the Warrant is anything other than this.[21]

¶50 Second, there must be "a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense."  Id.  Again, no argument supports the notion that the Warrant is deficient in this regard.  In the search context, to find probable cause the issuing magistrate must determine "under the totality of the circumstances, given all the facts and circumstances set forth in the affidavit, '"there is a fair probability that contraband or evidence of a crime will be found in a particular place."'"  Id., ¶24 (quoting State v. Desmidt, 155 Wis. 2d 119, 131, 454 N.W.2d 780 (1990)).  "We accord great deference to the warrant-issuing judge's determination of probable cause and that determination will stand unless the defendant establishes that the facts are clearly insufficient to support a finding of probable cause."  Higginbotham, 162 Wis. 2d at 989.  We will not conclude the facts were clearly insufficient if "the magistrate had a substantial basis for concluding that the probable cause

---

[21] The Warrant signed by the issuing judge on February 27, 2015, authorized the Mequon Police Department to install and monitor a GPS tracking device on Pinder's vehicle.  On March 9, 2015, Detective Polishinski attached the device on Pinder's vehicle.  Accordingly, the Warrant has prior judicial authorization from a neutral detached magistrate.

existed." Id. Here, the facts are clearly sufficient to support a probable cause determination, and we owe proper deference to the judicial determination in that regard.

¶51 Third, the Fourth Amendment requires that there be "a particularized description of the place to be searched and items to be seized." Sveum, 328 Wis. 2d 369, ¶20. In the context of GPS warrants, this requirement is satisfied when "a warrant application . . . 'describe[s] the object into which the [tracking device] is to be placed, the circumstances that led agents to wish to install the [tracking device], and the length of time for which [] surveillance is requested.'" Id., ¶30 (quoting Karo, 468 U.S. at 718). Here, again, the parties do not meaningfully question this part of the analysis. In the context of a GPS warrant, the parameters set forth are not unreasonable.

¶52 We conclude that the Warrant authorizing the installation and monitoring of a GPS tracking device on Pinder's vehicle satisfied all three requirements of the Warrant Clause and thus was a validly issued search warrant.

### 2. Police conduct

¶53 "Even if a court determines that a search warrant is constitutionally valid, the manner in which the warrant was executed remains subject to judicial review." Sveum, 328 Wis. 2d 369, ¶53. "A search 'must be conducted reasonably and appropriately limited to the scope permitted by the warrant.'" State v. Andrews, 201 Wis. 2d 383, 390, 549 N.W.2d 210 (1996). "The determination of reasonableness is made by reference to the

30

particular circumstances of each individual case, and balances the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Henderson, 245 Wis. 2d 345, ¶18 (citation omitted). Whether a search was reasonably executed is determined by considering "the totality of the circumstances." United States v. Banks, 540 U.S. 31, 35-36 (2003). Further, the "burden of proving the dissipation of probable cause . . . [is] with the defendant" because "[i]t would be an unreasonable and unnecessary burden on the [S]tate as well as the courts to force the [S]tate to justify the timeliness of every search warrant executed by requiring a showing that probable cause had not dissipated." State v. Edwards, 98 Wis. 2d 367, 376, 297 N.W.2d 12 (1980).

¶54 First, there is essentially no argument that the installation of the GPS tracking device did not comply with the terms of the Warrant. Instead, Pinder's argument focuses on noncompliance with the statute. In the case at issue, Detective Polishinski obtained the Warrant from the issuing judge to "install and monitor a [GPS] tracking device on [Pinder's vehicle]." The Warrant was subject to three restrictions: that the installation and monitoring be of a "tracking device," that the installation of the GPS tracking device be done by the Mequon Police Department, and that the GPS tracking device be "remove[d] . . . as soon as practicable after the objectives of the surveillance are accomplished or not later than 60 days from the date the order is signed." The execution of the Warrant was

31

well within the confines of the authority granted by the Warrant and did not violate any of the three restrictions. Initially, the Mequon Police Department installed and monitored a GPS tracking device on Pinder's vehicle. Further, the GPS tracking device was removed within 60 days, or alternatively "as soon as practicable after the objectives of the surveillance [were] accomplished." The surveillance was completed within 20 days of the Warrant's issuance——well within the 60-day limit——and the surveillance concluded "as soon as practicable" considering the objectives of the surveillance were to find evidence of Pinder committing burglaries, the location of evidence, and the identity of associates. The monitoring concluded after less than a week of surveillance of Pinder's vehicle and on the same day as when the GPS tracking device's alert and subsequent monitoring led the Mequon Police Department to obtain evidence that Pinder had committed a burglary of a suite of offices, to find stolen items from the suite of offices in Pinder's car, and to determine the identity of an individual, Polk, riding in the car with Pinder.

¶55 Second, Pinder has the "burden of proving the dissipation of probable cause." Edwards, 98 Wis. 2d at 376. He did not meet this burden. In addition, Pinder's counsel conceded "the [W]arrant on its face established probable cause," and that probable cause did not dissipate.

¶56 Third, the installation and monitoring of the GPS tracking device was reasonable under the totality of the circumstances. The Warrant was obtained, installed, and

32

monitored in compliance with the court order. The GPS tracking device in this case was in use for only six days, and the surveillance was stopped the same day as the Mequon Police Department obtained evidence that Pinder had committed a burglary of a suite of offices, found stolen items from the suite of offices in his car, and determined the identity of one of his potential criminal associates. Further, as the circuit court noted, investigating the crime of burglary typically necessitates prolonged surveillance because of the unpredictability of when the burglary will occur. Therefore, this is not a case where the use of a GPS tracking device became "unreasonable" under the Fourth Amendment. See Brereton, 345 Wis. 2d 563, ¶¶2, 13, 53-54 (finding that the installation and monitoring of a GPS tracking device for four days, as authorized by the warrant, in the investigation of "recent burglaries" was not unconstitutional).

¶57 Therefore, the State's conduct in the execution of the Warrant complied with the Fourth Amendment.

### C. Ineffective Assistance Of Counsel

¶58 Pinder additionally seeks review of the denial of his ineffective assistance of counsel claim. Pinder argues that his trial counsel was ineffective for failing to object to the Burglary jury instructions because, instead of using the word "building" or "office," the court should have used the phrase "room within a building." In this case, this is a distinction

33

without a difference.[22] This wording choice was not error but even if it were to be deemed error, it was not prejudicial. In short, Pinder's ineffective assistance of counsel claim fails.

¶59 Pinder argues that the Burglary jury instructions were erroneous. He argues "this present fact situation did not involve the Burglary of a Building . . . [because] the entry ways into the building were open at the time of the alleged entry" and thus the "instruction referred to a situation that, under the facts, was not a violation of the law." He argues that "the jury instruction's references to convicting someone for entering an 'office,' as an element of Burglary, was also legally incorrect" because an "'office' is not one of the places indicated in Wis. Stats. 943.10(1m)(a) through (f)," and the term "does not describe, or qualify as, any of the statutory examples cited in Wis. Stats. 943.10(1m)." Pinder argues that the first two errors in the Burglary jury instructions were not harmless because "the instruction[s] advised the jury that it could, and should, convict the Defendant improperly." Pinder argues that "the Burglary jury instruction was materially erroneous" because it created a "reasonable issue, and concern, of juror confusion and error" by "allow[ing] the jury to convict [him] of entry into a building or entry into an office."

---

[22] Pinder acknowledges as much, recognizing that "the facts of this present matter indicate essentially that the office was a room inside of the building."

34

Pinder's arguments do not demonstrate that counsel's performance was deficient in not so objecting.

¶60 At the outset, we acknowledge that the circuit court is entitled to some latitude in crafting jury instructions to comport with the evidence of the case. Dakter v. Cavallino, 2015 WI 67, ¶31, 363 Wis. 2d 738, 866 N.W.2d 656. While the circuit court could have used the phrase "a room within a building" instead of the words "office" or "building," the facts adduced would not confuse the jury as to what it was called upon to decide regardless of which of these words might be used. The jury heard the strong evidence against the defendant. There would be no confusion to the jury that it was to decide whether the State proved, beyond a reasonable doubt, that Pinder intentionally entered the locked office suites (prying the locked space open) without consent; and that he knew it was without consent and with the intent to steal (being videotaped at the office building and found shortly thereafter with burglarious tools and the stolen items in his car). See Wis. JI-Criminal 1421 (2001). It was based upon the evidence, regarding the locked rooms within the building, that the jury determined that Pinder burglarized the subject premises. Whether one would consider that an office, a building, or a room within a building is of no moment here. This is not a fact situation where any allegation was made that Pinder stole from a building open to the public. See Champlin v. State, 84 Wis. 2d 621, 624-27, 267 N.W.2d 295 (1978). The testimony was overwhelming as to what office area was burgled. Significantly,

35

the jury instructions did not preclude acquittal as the jury found the co-defendant, Polk, not guilty of the burglary.

¶61 In sum, Pinder has failed to demonstrate that his trial counsel's performance was ineffective.

V. CONCLUSION

¶62 We conclude that a search warrant issued for the placement and use of a GPS tracking device on a motor vehicle, but not executed within five days after the date of issuance per Wis. Stat. § 968.15(1) or timely returned under Wis. Stat. § 968.17(1), is not void if the search was otherwise reasonably conducted, because it is not a warrant issued "for the purpose of seizing designated property or kinds of property" under Wis. Stat. § 968.12(1). It is not a warrant that seeks a "document" or "electronic data" under the control of the vehicle owner as is required under Wis. Stat. § 968.13 and thus, is not subject to the execution and return provisions of §§ 968.15 and 968.17(1). Such a warrant for GPS tracking is not issued pursuant to a statute, but instead is issued pursuant to the court's inherent authority and thus, must comply only with the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution. Because the GPS warrant in this case was otherwise constitutionally sufficient, the evidence obtained as a result of the warrant is not subject to suppression. Therefore, we affirm the circuit court.

*By the Court.*—The judgment of the circuit court is affirmed.

36

¶63 DANIEL KELLY, J. *(concurring).* I join the court's opinion, except to the extent it "urge[s] the legislature to consider enacting a specific statutory grant of authority to define parameters and requirements with respect to GPS warrants." Majority op., ¶42.

¶64 As a general rule, I think it is inappropriate for the judiciary to request the legislature to legislate. And in this specific instance, I think we would have been wise to heed the old proverb that one should be careful about one's wishes, because they just might be granted. I have no idea what the legislature might do with the court's request, and neither does the court.

¶65 In any event, this is now the third time we have asked the legislature to adopt a GPS-warrant statute. It didn't answer the phone the last two[1] times[2] we called, and it isn't particularly likely it will find our latest overture more charming. Indeed, we're starting to look a wee bit desperate. Maybe the legislature is being standoffish because it just

---

[1] "We suggest that the legislature address the constantly evolving nature of electronic incursions." State v. Brereton, 2013 WI 17, ¶54 n.16, 345 Wis. 2d 563, 826 N.W.2d 369.

[2] "Second, I echo my colleagues' requests, see Justice Ziegler's concurrence, ¶¶79, 84; Chief Justice Abrahamson's dissent, ¶126, that the Wisconsin legislature weigh in on this issue and enact legislation governing the proper procedures for issuing a warrant, executing that warrant, and other procedural concerns related to police searches using GPS, such as time limits and return on the warrant requirements." State v. Sveum, 2010 WI 92, ¶77, 328 Wis. 2d 369, 787 N.W.2d 317 (Crooks, J., concurring).

doesn't want to go on this date with us. Rapid technological advances make obsolescence a regular feature of modern life. The legislature may have concluded that a GPS-warrant statute would be a mere stop-gap measure that would require constant updating to keep pace with the latest developments.

¶66 Or maybe the legislature quizzically quirks its collective eyebrow whenever we bring this up because our requests are always accompanied by proof we don't need its help. Our opinion correctly concluded that our courts have the inherent authority to issue GPS warrants. It also deftly considered the warrant's fidelity to constitutional constraints and correctly concluded there was no violation. Those were the only two issues we needed to address, and we confidently and competently resolved them without any input from the legislature whatsoever. Our work in this case, <u>Brereton</u>, and <u>Sveum</u> all prove that we don't need the legislative branch's help in evaluating GPS warrants. As the legislature glances back and forth between our several requests and the accompanying opinions, it would certainly be justified in wondering what, exactly, we want it to do.

¶67 I wonder, too. Our opinion says: "Had the legislature enacted such a statute, we may very well not be confronted with the issues now present." Majority op., ¶42. Maybe. Maybe not. A GPS-warrant statute might have saved us the effort we expended in this case, but it will do nothing when the next case brings us a different type of warrant that does not fit within a statutory classification. We will have to

2

determine then, just as we did today, whether our inherent authority justifies such an exercise of authority. Will we include in that future opinion a request that the legislature adopt another statute to cover the new type of warrant? Will we do this every time we encounter a warrant for which there is no specific statutory authorization? If so, then our request is really that the legislature completely supplant our inherent authority to issue warrants. If we made a practice of bungling the exercise of this authority, there might be good justification for the request. But we haven't, so this can't be the reason we need a GPS-warrant statute.

¶68 Perhaps the court believes such a statute will reduce our workload, saving us from having to consider whether a challenged GPS warrant complies with constitutional requirements. However, a warrant that violates one of our constitutions doesn't become less offensive just because a statute authorized it. If the legislature adopts a GPS-warrant statute, we will have plenty of opportunities to consider its constitutional bona fides in minute detail, most likely in a long succession of cases. And when we have finally and fully vetted the requested statute, we will still entertain claims that the statutorily-authorized warrant was executed unconstitutionally. So asking the legislature for a GPS-warrant statute cannot be justified as a labor-saving device for the judiciary.

¶69 It is possible that our constitutions allow for warrants that offend certain prudential sensibilities. But

3

prudence is the realm of public policy, and the people of Wisconsin have entrusted public policy to the legislative branch. It is not the judiciary's role to opine on the wisdom of any given policy, or even its absence. It is merely to decide whether the parties before us have honored their lawful obligations. Today's opinion could have fulfilled that role without asking for new public policy. That is where we should have stopped, and I join the opinion up to that point.

¶70 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.