# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1346-CQ |
| COMPLETE TITLE: | United States of America, Plaintiff-Appellee, v. Dennis Franklin and Shane Sahm, Defendants-Appellants. |

ON CERTIFIED QUESTION FROM THE UNITED STATES
COURT OF APPEALS FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| OPINION FILED: | June 6, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 11, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, J. concurs (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-appellants, there were briefs filed by *Shelley M. Fite* and *Federal Defender Services of Wisconsin*, Madison. There was an oral argument by *Shelly M. Fite*.

For the plaintiff-appellee, there was a brief filed by *Laura A. Przyblinski Finn*, *Scott C. Blader*, and *United States Attorney's Office*, Madison. There was an oral argument by *Laura A. Przyblinski*.

An amicus curiae brief was filed on behalf of State of Wisconsin by *Amy C. Miller*, solicitor general, with whom on the brief were *Ryan J. Walsh*, chief deputy solicitor general, and *Brad D. Schimel*, attorney general. There was an oral argument by *Amy C. Miller*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2018AP1346-CQ

STATE OF WISCONSIN  :  IN SUPREME COURT

United States of America,

     Plaintiff-Appellee,

  v.

Dennis Franklin and Shane Sahm,

     Defendants-Appellants.

**FILED**

**JUN 6, 2019**

Sheila T. Reiff
Clerk of Supreme Court

CERTIFICATION of a question of law from the United States Court of Appeals for the Seventh Circuit. *Certified question answered and cause remanded.*

¶1   REBECCA FRANK DALLET, J.   This case is before the court on a certified question from the United States Court of Appeals for the Seventh Circuit. United States v. Franklin, 895 F.3d 954 (7th Cir. 2018); see Wis. Stat. § 821.01 (2017-18).[1] The question certified for determination is:

> Whether the different location subsections of the Wisconsin burglary statute, Wis. Stat. § 943.10(1m)(a) -(f), identify alternative elements of burglary, one

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

of which a jury must unanimously find beyond a reasonable doubt to convict, or whether they identify alternative means of committing burglary, for which a unanimous finding beyond a reasonable doubt is not necessary to convict?

¶2 Our answer to this certified question will aid the Seventh Circuit in determining the appropriate sentences for Dennis Franklin and Shane Sahm (together, the defendants), who had their sentences enhanced pursuant to the federal Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1).

¶3 The defendants pleaded guilty to violations of 18 U.S.C. § 922(g)(1) for possessing firearms after having been previously convicted of a felony. Based upon their previous Wisconsin burglary convictions, the defendants were classified as armed career criminals and sentenced to a mandatory minimum of 15 years in prison pursuant to the ACCA. The defendants objected to their status as armed career criminals on appeal to the Seventh Circuit, where their cases were consolidated. A three-judge panel of the Seventh Circuit held that the defendants' prior burglary convictions were predicate violent felonies under the ACCA because each of the locations set forth in Wis. Stat. § 943.10(1m)(a)-(e) identify alternative elements for the crime of burglary making them each distinct crimes.[2] The defendants filed a petition for rehearing en banc. They

---

[2] While the Seventh Circuit "put aside subsection (f)" of Wis. Stat. § 943.10(1m), reasoning that the appeals "present no issue under it," the court acknowledged that subsection (f) overlaps each of the other subsections in § 943.10(1m). United States v. Franklin, 884 F.3d 331, 335 (7th Cir. 2018), reh'g granted, judgment vacated, 895 F.3d 954 (2018).

2

asserted that because the locational alternatives in § 943.10(1m)(a)-(f) provide alternative means of committing one element of the crime of burglary, the Wisconsin burglary statute is too broad to fall within the definition of burglary as a predicate violent felony under the ACCA. The Seventh Circuit granted the petition for rehearing, vacated its prior opinion, and certified the question of Wisconsin state law to this court.

¶4 To answer the certified question, we examine the four factors set forth in Derango: (1) the statutory text; (2) the legislative history and context of the statute; (3) the nature of the conduct; and (4) the appropriateness of multiple punishments. State v. Derango, 2000 WI 89, ¶¶14-15, 236 Wis. 2d 721, 613 N.W.2d 833. We conclude that Wis. Stat. § 943.10(1m)(a)-(f) identifies alternative means of committing one element of the crime of burglary under § 943.10(1m). Accordingly, a unanimous finding of guilt beyond a reasonable doubt as to a locational alternative in subsections (a)-(f) is not necessary to convict.

I

¶5 Under 18 U.S.C. § 922(g)(1), it is unlawful for a person who has been convicted of a felony to possess a firearm. The sentence for unlawful possession of a firearm under § 922(g) is a maximum of ten years in prison. See 18 U.S.C. § 924(a)(2). The penalty increases, however, to a 15-year mandatory minimum under the ACCA for certain federal defendants who have three prior convictions for a "violent felony," including "burglary, arson, or extortion." 18 U.S.C. § 924(e). Section 924(e) does

not define burglary. Consequently, for purposes of the ACCA, the United States Supreme Court in Taylor v. United States, 495 U.S. 575 (1990), adopted the following "generic" definition of burglary: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 598. To determine whether a defendant's past offense counts as an ACCA predicate, courts compare the elements of the crime of conviction with the elements of the "generic" definition of the crime, employing the "categorical approach." Mathis v. United States, 136 S. Ct. 2243, 2247-48 (2016). The prior offense qualifies as an ACCA predicate if its elements are the same as, or narrower than, those of the generic offense. Id. at 2247. However, if the crime of conviction covers more conduct than the generic offense, then it does not qualify as an ACCA predicate, even if the defendant's actual conduct indisputably fits within the generic offense's boundaries. Id. at 2248.

¶6 The categorical approach can be difficult to apply if a statute is phrased alternatively, like Wisconsin's burglary statute, Wis. Stat. § 943.10(1m). As the United States Supreme Court has explained, alternatively phrased statutes come in two types: (1) those that list alternative elements (defining more than one crime within a single statute); and (2) those that list alternative factual means of committing a single element of a crime. See Mathis, 136 S. Ct. at 2249. "'Elements' are the 'constituent parts' of a crime's legal definition——the things the 'prosecution must prove to sustain a conviction.'" Id. at

4

2248 (quoted source omitted). In contrast, means "spell[] out various factual ways of committing some component of the offense," that a jury need not unanimously find. Id. at 2249. The appropriate sentences for the defendants turn on whether the locational alternatives set forth in subsections (a)-(f) of § 943.10(1m) are alternative means of committing one element of burglary or are alternative elements of burglary.

II

¶7 When faced with the question of whether the legislature "create[d] multiple offenses or a single offense with multiple modes of commission," this court has analyzed the following four factors: (1) the language of the statute; (2) the legislative history and context of the statute; (3) the nature of the proscribed conduct; and (4) the appropriateness of multiple punishments for the conduct. Derango, 236 Wis. 2d 721, ¶¶14-15; see also State v. Hammer, 216 Wis. 2d 214, 220, 576 N.W.2d 285 (Ct. App. 1997); Manson v. State, 101 Wis. 2d 413, 422, 304 N.W.2d 729 (1981). The objective of this inquiry is to determine whether the legislature "intend[ed] to create multiple, separate offenses, or a single offense capable of being committed in several different ways." Derango, 236 Wis. 2d 721, ¶15; see also Manson, 101 Wis. 2d at 422.

¶8 In Derango, this court was faced with the question of whether Wis. Stat. § 948.07 "creates multiple offenses or a single offense with multiple modes of commission." Derango, 236 Wis. 2d 721, ¶14. Section 948.07 read:

5

Whoever, with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class BC felony:

(1) Having sexual contact or sexual intercourse with the child in violation of s. 948.02 or 948.095.

(2) Causing the child to engage in prostitution.

(3) Exposing a sex organ to the child or causing the child to expose a sex organ in violation of s. 948.10.

(4) Taking a picture or making an audio recording of the child engaging in sexually explicit conduct.

(5) Causing bodily or mental harm to the child.

(6) Giving or selling to the child a controlled substance or controlled substance analog in violation of ch. 961.

Id., ¶16. The Derango court examined the four factors and determined that the statute created one offense of causing a child to go into a secluded place "with any of six possible prohibited intents." Jury unanimity as to intent was therefore not required. Id., ¶17.

¶9 The defendants argue that application of the four Derango factors leads to the conclusion that the legislature intended to create a single offense of burglary with multiple means of commission.[3] The federal government asserts that the Derango factors support its position that subsections (a)-(f) identify alternative locational elements requiring jury unanimity yet also maintains that the holding in Derango should

---

[3] The four factors were first enunciated in Manson v. State, 101 Wis. 2d 413, 422, 304 N.W.2d 729 (1981).

6

be limited to the child enticement statute at issue in that case. We analyze the Derango factors and conclude that Wis. Stat. § 943.10(1m)(a)-(f) sets forth alternative means of committing one element of burglary.

¶10 We begin with an examination of the plain language of the statute. Wis. Stat. § 943.10(1m)(a)-(f) provides:

> Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class F felony:
>
> (a) Any building or dwelling; or
>
> (b) An enclosed railroad car; or
>
> (c) An enclosed portion of any ship or vessel; or
>
> (d) A locked enclosed cargo portion of a truck or trailer; or
>
> (e) A motor home or other motorized type of home or a trailer home, whether or not any person is living in any such home; or
>
> (f) A room within any of the above.

The straightforward language of § 943.10(1m) creates one offense with multiple means of commission. Burglary can be broken down into the following elements: intentional entry, without consent, and with intent to steal or commit a felony.[4]

---

[4] Wisconsin JI——Criminal 1424 (2001) lists the four elements that the State must prove:

1. The defendant intentionally entered a building.

2. The defendant entered the building without the consent of the person in lawful possession.

(continued)

7

Subsections (a)-(f) list "any of the following places" of entry and thus provides the means of commission for the element of entry. The crime is the act of the burglarious entry into one of the listed locations, regardless of which particular location is entered.

¶11 Moreover, similar to the alternative prohibited intents set forth in the child enticement statute in Derango, Wis. Stat. § 943.10(1m) does not create different penalties for the possible locational alternatives set forth in subsections (a)-(f). See Derango, 236 Wis. 2d 721, ¶16. Instead, regardless of which of the six locations a burglar enters, the punishment is determined by the offense's status as a Class F felony. The absence of different penalties for the locational alternatives weighs against the federal government's argument that § 943.10(1m)(a)-(f) contains separate elements. See Mathis, 136 S. Ct. at 2256 ("If statutory alternatives carry

---

3. The defendant knew that the entry was without consent.

4. The defendant entered the building with intent to commit (state felony), [that is, that the defendant intended to commit (state felony) at the time the defendant entered the building].

While the elements include the word "building," note 2 to the instruction indicates that "[t]he model instruction is drafted for a case involving entry into a 'building.' It must be modified if entry involved any of the other places listed in [Wis. Stat.] § 943.10(1)(a) through (f)." Wis JI——Criminal 1424 at n.2 (2001).

8

different punishments, then under Apprendi[5] they must be elements."). The plain text of § 943.10(1m) thus supports the conclusion that the statute creates a single crime of burglary with multiple means of commission, rather than multiple, separate offenses.

¶12 The second Derango factor instructs the court to examine the legislative history and context of the statute. We recognize that Derango was decided prior to State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110, this court's seminal case on statutory interpretation.[6] As this court stressed in Kalal, statutory interpretation begins with the language of the statute. Kalal, 271 Wis. 2d 633, ¶45. Where the statutory language is unambiguous, we generally do not consult extrinsic sources of interpretation like legislative history. Id., ¶46. However, as we clarified in Kalal, "legislative history is sometimes

---

[5] Apprendi v. New Jersey, 530 U.S. 466 (2000).

[6] At oral argument, counsel for the defendants acknowledged that the second factor in State v. Derango, 2000 WI 89, 236 Wis. 2d 721, 613 N.W.2d 833, was "different than how this court usually articulates statutory interpretation" since, pursuant to State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110, "and the more modern discussion of statutory interpretation," context and purpose are analyzed alongside the statutory language whereas legislative history may be consulted separately. Therefore, the concurrence's allegation that we resolve this issue "spontaneously, and incautiously" sua sponte is not entirely accurate. Concurrence, ¶31. Instead of ignoring Kalal as suggested by the concurrence, we read Derango in accordance with Kalal.

consulted to confirm or verify a plain-meaning interpretation." Id., ¶51.  We determine that Wis. Stat. § 943.10(1m) is unambiguous and thus as a part of the second Derango factor we will examine the legislative history to confirm our plain-meaning interpretation.

¶13 We also observe that Kalal does not disturb this court's ability to inquire into statutory context under the second Derango factor.  Evaluation of the context of a statute is part of a plain-meaning analysis and includes a review of the language of "surrounding or closely-related statutes," id., ¶46, as well as "previously enacted and repealed provisions of a statute."  Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581; see also Kalal, 271 Wis. 2d 633, ¶52 n.9.

¶14 A review of the legislative history and context of the statute further supports our conclusion that Wis. Stat. § 943.10(1m) creates one crime of burglary with alternative means of commission.  The burglary statute "was created as part of the comprehensive revision of the Wisconsin Criminal Code" that was intended to simplify the criminal law and state each section in "clear, concise and definite language so that the scope of the section will be plain."  Champlin v. State, 84 Wis. 2d 621, 624-25 & n.1, 267 N.W.2d 295 (1978).  The original draft of the statute defined burglary using the following general locational language:  "[w]hoever enters any structure without the consent of the owner and with intent to steal or commit a felony therein may be imprisoned not more than 10

10

years." Id. at 625 (quoting 1951 S.B. 784) (emphasis added); see also § 343.10, ch. 623, Laws of 1953. The comments to the proposed section stated in part: "As far as the basic elements of burglary are concerned . . . There must be (1) an entry of a structure, (2) the entry must be without consent of the owner, and (3) the entry must be made with intent to steal or commit a felony in the structure." See 1950 Report of Wisconsin Legislative Council, Vol. VII, Report on the Criminal Code (Apr. 1951) at 81-82; see also Champlin, 84 Wis. 2d at 625. This version of the statute defined "structure" as "any [e]nclosed building or tent, any [e]nclosed vehicle (whether self-propelled or not) or any room within any of them." § 339.22, ch. 623, Laws of 1953.

¶15 The legislature's advisory committee subsequently made several changes to incorporate the various locations within the definition of "structure" into the burglary statute: "building, dwelling, enclosed railroad car or the enclosed portion of any ship or vessel, or any room therein." See Wisconsin Legislative Council, Meeting of the Criminal Code Advisory Committee at 9 (July 23, 1954). Thereafter the committee sent the statute back to the technical staff to have it formatted in an "a-b-c fashion." Wisconsin Legislative Council, Meeting of the Criminal Code Advisory Committee at 11 (July 24, 1954). Ultimately when the law was enacted in 1955 it read:

> (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than 10 years:

11

(a) Any building or dwelling; or

(b) Any enclosed railroad car; or

(c) An enclosed portion of any ship or vessel; or

(d) A locked enclosed cargo portion of a truck or trailer; or

(e) A room within any of the above.

§ 943.10, ch. 696, Laws of 1955.[7]

¶16 As is clear from the legislative history and context of the statute, the legislature did not intend for the crime of burglary to include a separate locational element. The statute originally included the element of entry of "any structure," which was eventually replaced with the entry of "any of the following places" listed in subsections (a)-(f). The locational alternatives added to the burglary statute thus "replace[d] and clarif[ied]" the general language and did not take what was once a single crime and replace it with multiple crimes. See Derango, 236 Wis. 2d 721, ¶20. Examination of the legislative history and context of Wis. Stat. § 943.10(1m) thus confirms the conclusion that the locational alternatives set forth in subsections (a)-(f) are means of committing one element of burglary and do not create alternative elements of burglary for which jury unanimity is required.

¶17 Finally, our assessment of the nature of the proscribed conduct and the appropriateness of multiple

---

[7] The statute has remained virtually the same with only minor changes made by the legislature since 1955.

punishments leads us to conclude that the legislature intended to create one crime of burglary with multiple means of commission. "We have previously concluded that acts warrant separate punishment when they are separate in time or are significantly different in nature." Derango, 236 Wis. 2d 721, ¶21 (citing State v. Sauceda, 168 Wis. 2d 486, 499-500, 485 N.W.2d 1 (1992)). The proscribed conduct here is entering a specified location without consent and with intent to steal or commit a felony. Regardless of which location is entered, there is only one act of burglary.

¶18 If we adopt the position of the federal government, a defendant could receive multiple punishments for the same act in violation of the double jeopardy clauses of the federal and Wisconsin constitutions. Derango, 236 Wis. 2d 721, ¶26; U.S. Const. amend. V; Wis. Const. art. I, § 8.[8] For example, if a defendant burglarized a houseboat, he or she could be convicted of four crimes for one act: burglary of a dwelling under Wis. Stat. § 943.10(1m)(a), burglary of a vessel under § 943.10(1m)(c), burglary of a room within a dwelling under § 943.10(1m)(f), and burglary of a room within a vessel under § 943.10(1m)(f). The federal government disputes the frequency

---

[8] The double jeopardy clauses of the federal and state constitutions are "intended to provide three protections: protection against a second prosecution for the same offense after acquittal; protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense." State v. Sauceda, 168 Wis. 2d 486, 492, 485 N.W.2d 1 (1992).

13

of such overlap. Undoubtedly, however, a defendant will oftentimes enter both a location specified under subsections (a)-(e) and a room within that location under subsection (f), resulting in more than one potential punishment for the same act.

¶19 Recently, in denying an ineffective assistance of counsel claim for failure to object to jury instructions, we confirmed that the locational alternatives in Wis. Stat. § 943.10(1m)(a)-(f) are alternative factual means: "[w]hile the circuit court could have used the phrase 'a room within a building' instead of the words 'office' or 'building,' the facts adduced would not confuse the jury as to what it was called upon to decide regardless of which of these words might be used." State v. Pinder, 2018 WI 106, ¶60, 384 Wis. 2d 416, 919 N.W.2d 568.[9] Ultimately, we upheld the defendant's conviction for burglary of locked rooms within a building regardless of "[w]hether one would consider that an office, a building, or a room within a building." Id. We conclude that based upon the nature of the proscribed conduct and the appropriateness of multiple punishments, the legislature intended that

---

[9] Pinder claimed that the building entryways were open at the time of the alleged entry and therefore the instructions were legally incorrect because they referred to a situation that was not a violation of the law. State v. Pinder, 2018 WI 106, ¶¶58-59, 384 Wis. 2d 416, 919 N.W.2d 568. Pinder further argued that the word "office" is not listed in Wis. Stat. § 943.10(1m)(a)-(f). Id.

§ 943.10(1m)(a)-(f) set forth alternative means of committing one element of burglary and not elements of distinct crimes.

III

¶20 In sum, after analysis of the statutory text, the legislative history and context of the statute, the nature of the conduct, and the appropriateness of multiple punishments, we conclude that the locational alternatives in Wis. Stat. § 943.10(1m)(a)-(f) identify alternative means of committing one element of the crime of burglary under § 943.10(1m). Accordingly, a unanimous finding of guilt beyond a reasonable doubt as to subsections (a)-(f) is not necessary to convict. We therefore remand the cause to the United States Court of Appeals for the Seventh Circuit.

*By the Court.—Certified question answered and cause remanded.*

¶21 SHIRLEY S. ABRAHAMSON, J. *(concurring).* I agree with the majority that Wis. Stat. § 943.10(1m) identifies a single crime with multiple modes of commission.

¶22 I write separately, however, to address the majority's imprudent, sua sponte decision to modify the legal test adopted by this court in State v. Derango, 2000 WI 89, ¶¶14-15, 236 Wis. 2d 721, 613 N.W.2d 833.

¶23 In Derango, this court held that the following four factors should be considered when determining whether the legislature intended to create multiple offenses or a single offense with multiple modes of commission: "1) the language of the statute, 2) the legislative history and context of the statute, 3) the nature of the proscribed conduct, and 4) the appropriateness of multiple punishment for the conduct."[1]

¶24 Subsequently, in State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110, this court limited the circumstances under which legislative history could be consulted in interpreting a statute's meaning. The Kalal court announced that "extrinsic sources of statutory interpretation" such as "items of legislative history" should not be consulted "except to resolve an ambiguity in the statutory language . . . ."[2] "If the meaning

---

[1] State v. Derango, 2000 WI 89, ¶15, 236 Wis. 2d 721, 613 N.W.2d 833 (emphasis added); see also Manson v. State, 101 Wis. 2d 413, 422, 304 N.W.2d 729 (1981); State v. Hammer, 216 Wis. 2d 214, 220, 576 N.W.2d 285 (Ct. App. 1997).

[2] State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶¶50-51, 271 Wis. 2d 633, 681 N.W.2d 110.

of the statute is plain," the inquiry ordinarily stops and extrinsic sources of statutory interpretation need not be consulted.[3]

¶25 The majority concludes that "[t]he straightforward language of § 943.10(1m) creates one offense with multiple means of commission."[4] Isn't this ordinarily the end of the inquiry under Kalal?[5]

¶26 The majority attempts to reconcile Derango with Kalal by highlighting that, under Kalal, "legislative history is sometimes consulted 'to confirm or verify a plain-meaning interpretation'" of an unambiguous statute.[6] The majority then examines the legislative history of Wis. Stat. § 943.10(1m) and confirms its "plain-meaning interpretation" that the statute creates a single offense with multiple modes of commission.[7]

¶27 In my view, the majority has muddied that which it sought to clarify. By hastily disposing of a significant legal issue[8] without the benefit of adversarial briefing,[9] the majority has raised more questions than it answered.

---

[3] Kalal, 271 Wis. 2d 633, ¶45 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659).

[4] Majority op., ¶10.

[5] Kalal, 271 Wis. 2d 633, ¶45 (quoting Seider, 236 Wis. 2d 211, ¶43).

[6] Majority op., ¶12 (quoting Kalal, 271 Wis. 2d 633, ¶51).

[7] See majority op., ¶¶12-17.

[8] That is, the effect of Kalal on Derango's four-factor test.

¶28 For example, if the "straightforward language" of a statute creates one offense with multiple modes of commission, but the statute's legislative history suggests otherwise, what weight, if any, should be afforded to the legislative history? Under such circumstances, should the court disregard the legislative history altogether?

¶29 Further, does it remain proper for courts to examine and give analytical weight to Derango's third and fourth factors? That is, if the statute's language is plain and its plain meaning is confirmed by the statute's legislative history and context, what possible effect could the nature of the conduct or the appropriateness of multiple punishments have on the court's analysis?

¶30 These are important and complicated legal questions. The people of Wisconsin deserve careful and considered answers to them, and in my view, "[t]he rule of law is generally best developed when matters are tested by the fire of adversarial briefs and oral arguments."[10] "The fundamental premise of the

---

[9] Adversarial briefing of legal issues is important for the court to reach a sound decision. Responding to a question at oral argument is unlikely to supply the requisite analytical detail to comprehensively resolve the issue.

[10] Maurin v. Hall, 2004 WI 100, ¶120, 274 Wis. 2d 28, 682 N.W.2d 866 (Abrahamson, C.J., & Crooks, J., concurring) (overruled on other grounds by Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, 293 Wis. 2d 38, 717 N.W.2d 216); see also Springer v. Nohl Elec. Prods. Corp., 2018 WI 48, ¶51, 381 Wis. 2d 438, 912 N.W.2d 1 (Abrahamson, J., dissenting); Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶70, 356 Wis. 2d 665, 849 N.W.2d 693 (Abrahamson, C.J., dissenting).

adversary process is that these advocates will uncover and present more useful information and arguments to the decision maker than would be developed by a judicial officer acting on his own in an inquisitorial system."[11]

¶31 Because the majority makes the unwise decision to deviate from adversarial process by spontaneously, and incautiously, answering a complicated legal question on its own, I concur.

---

[11] Adam A. Milani & Michael R. Smith, Playing God: A Critical Look at Sua Sponte Decisions by Appellate Courts, 69 Tenn. L. Rev. 245, 247 (2002) (citing United States v. Burke, 504 U.S. 229, 246 (1992) (Scalia, J., concurring)); see also Allan D. Vestal, Sua Sponte Consideration in Appellate Review, 27 Ford. L. Rev. 477, 493-94 (1958-59):

> When the appellate court considers a matter sua sponte for the first time it means that the litigants have not been given an opportunity to consider the matter and urge arguments in support of and against the position adopted by the reviewing court. If the question had been raised there is at least a possibility that other facts or other authorities might have been presented which might have changed the court's attitude on the matter.