# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP283 |

| | |
|---|---|
| COMPLETE TITLE: | Gail Moreschi,<br>       Plaintiff-Appellant-Petitioner,<br>     v.<br>Village of Williams Bay and Town of Linn ETZ<br>Zoning Board of Appeals, William L. Edwards and<br>Suzanne Edwards,<br>       Defendants-Respondents. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 388 Wis. 2d 475,934 N.W.2d 573
(2019 – unpublished)

| | |
|---|---|
| OPINION FILED: | December 30, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 8, 2020 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Walworth |
| JUDGE: | David M. Reddy |

JUSTICES:

DALLET, J., delivered the majority opinion of the Court with respect to all parts except ¶¶23 and 24, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, and KAROFSKY, JJ., joined, and an opinion with respect to ¶¶23 and 24, in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined. ZIEGLER, J., filed a concurring opinion, in which ROGGENSACK, C.J., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.

NOT PARTICIPATING:

HAGEDORN, J., did not participate.

ATTORNEYS:

For the plaintiff-appellant-petitioner, there were briefs filed by *Charles W. Pollard, Edward F. Thompson* and *Clair, Thompson & Pollard, S.C.*, Delavan. There was an oral argument by *Charles W. Pollard*.

For the defendant-respondents Village of Williams Bay Town of Linn ETZ Zoning Board of Appeals, there was a brief filed by

*Thomas C. Cabush, Dustin T. Woehl* and *Kasdorf Lewis & Swietlik, SC*, Milwaukee.  There was an oral argument by *Thomas C. Cabush*.

For the defendants-respondents William L. Edwards and Suzanne Edwards, there was a brief filed by *Anthony A. Coletti* and *Law Offices of Anthony A. Coletti, S.C.*, Elkhorn.  There was oral argument by *Anthony A. Coletti*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP283
  (L.C. No. 2017CV338)

STATE OF WISCONSIN        :        IN SUPREME COURT

**Gail Moreschi,**

     **Plaintiff-Appellant-Petitioner,**

    **v.**

**Village of Williams Bay and Town of Linn ETZ Zoning Board of Appeals, William L. Edwards and Suzanne Edwards,**

     **Defendants-Respondents.**

**FILED**

**DEC 30, 2020**

Sheila T. Reiff
Clerk of Supreme Court

---

DALLET, J., delivered the majority opinion of the Court with respect to all parts except ¶¶23 and 24, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, and KAROFSKY, JJ., joined, and an opinion with respect to ¶¶23 and 24, in which ANN WALSH BRADLEY and KAROFSKY, JJ., joined. ZIEGLER, J., filed a concurring opinion, in which ROGGENSACK, C.J., joined. REBECCA GRASSL BRADLEY, J., filed a dissenting opinion.

HAGEDORN, J., did not participate.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA FRANK DALLET, J. A person aggrieved by a local zoning board's decision may commence a certiorari-review action "within 30 days after the filing of the decision in the office of

the board of appeals." Wis. Stat. § 62.23(7)(e)10. (2017-18).[1] After the Village of Williams Bay Extraterritorial Zoning Board of Appeals (the "Board") approved Suzanne and William Edwards' variance request, Gail Moreschi, the Edwardses' neighbor, filed a writ of certiorari. She filed her writ within 30 days after the Board orally voted to grant the Edwardses a variance but well before the Board issued and filed a written copy of its decision. We must determine the "triggering event" for an aggrieved party's right to certiorari review of a local zoning board of appeals' decision. We conclude that, pursuant to § 62.23(7)(e)10., certiorari review of the board's decision is triggered when a written copy of the decision is filed in the board's office.

¶2 That conclusion informs our decision regarding Moreschi's other two claims: (1) that her due process rights were violated by the inclusion of the Board's written decision and its approved minutes in the certiorari record; and (2) that the Board reached its decision under the incorrect theory of law because at the time she filed her writ, the Board had not made the findings required under the relevant local ordinance. We reject both claims. The Board's written decision and approved minutes were properly included in the certiorari record and the Board's filed decision contains all findings required by the local ordinance. Accordingly, we affirm the court of appeals.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶3 Gail Moreschi owns residential property in Linn Township next to Suzanne and William Edwards. The Edwardses tore down the existing home on their property with plans to rebuild it, but their plans required a variance to the setback zoning ordinance. After Linn Township approved their building plans, the Edwardses petitioned the Board for a zoning variance.[2]

¶4 On May 23, 2017, the Board held a public hearing on the Edwardses' request. The Edwardses argued that a variance was necessary in order to install a septic system and, because their lot had a 12-percent slope and trees that Linn Township required them to preserve, there was only one place they could put it. The septic system's placement, in turn, dictated where the Edwardses could build their home. They noted that their new home would have "roughly . . . the same footprint" as the previous home although it would "actually encroach[] a little bit less into the setbacks." The Edwardses argued that their request satisfied the five conditions necessary for the Board to grant a variance pursuant to Village of Williams Bay Extraterritorial Zoning (ETZ) Ordinance § 18.1716(H)[3]: (1) their proposal was consistent with the local development's purpose and intent; (2) the lot's slope constituted

---

[2] The Board hears such variance requests from residents of Linn, Delavan, Geneva, and Walworth Townships and the Village of Williams Bay. Village of Williams Bay Extraterritorial Zoning (ETZ) Ord. § 18.1700(H).

[3] ETZ Ord. § 18.1716 contains two subsections labeled "(H)." Throughout this opinion, each reference to subsec. (H) is to the one titled "Findings."

an exceptional circumstance; (3) they had not caused any of the reasons necessitating the variance; (4) they could not build their home without the variance; and (5) there was no detriment to Moreschi's property because the Edwardses' new home would be three feet further away from Moreschi's property line than the previous one.[4]

¶5 Moreschi opposed the Edwardses' variance request on the grounds that it failed to meet at least one of those conditions. Specifically, she argued that, according to an affidavit of the Walworth County Sanitarian, the Edwardses had several other options available that would not require a variance. Those options included moving their driveway to accommodate the septic system, installing a smaller system, using a holding tank instead of a septic system, or simply building a smaller home. Moreschi asserted that because the Edwardses would not be prevented from building any home, a variance was not necessary to preserve their property rights.

¶6 At the hearing, the Board heard community commentary on the Edwardses' request. Some in favor of the variance noted that

---

[4] The Board's governing ordinance provides that the Board "shall grant no variance" unless it finds "beyond a reasonable doubt" that the following five conditions are satisfied: (1) the variance is "consistent with the purpose and intent" of the local development; (2) there are "exceptional, extraordinary, or unusual circumstances" requiring the variance; (3) the basis for the variance is not solely "economic gain or loss" or a "[s]elf-imposed hardship[]"; (4) the variance is "necessary" to preserve the applicant's "enjoyment of substantial property rights" similar to those of neighboring properties; and (5) the variance will not cause "substantial detriment" to others' property or the "public interest." ETZ Ord. § 18.1716(H)(A)-(E).

4

the Edwardses' plans were consistent with attempts to "modernize" the subdivision and that denying the Edwardses a variance would frustrate that process. Some against it pointed out that what the Edwardses claimed as an "exceptional circumstance," a 12-percent slope, was not exceptional at all because "virtually all properties" in the subdivision had similar slopes. At the end of the hearing, the Board unanimously approved the Edwardses' variance request by oral vote.

¶7 On June 12, 2017, Moreschi filed for a writ of certiorari in the Walworth County Circuit Court.[5] She alleged that the Board improperly granted the Edwardses a variance because it failed to find beyond a reasonable doubt all five conditions required under ETZ Ord. § 18.1716(H). The circuit court granted the writ on June 28, 2017, giving the Board until July 7 to return a certified transcript of the record. Also on June 28, Moreschi received draft minutes of the Board's May 23 hearing via an open records request. The draft minutes reflected the Board's unanimous approval of the Edwardses' variance. Under the heading "Board of Appeals['] Findings," the draft minutes indicated that the Board had approved the variance because it "felt that there was a lack of detriment."

¶8 At the Board's next meeting on July 31, the Board issued "approved" minutes of the May 23 hearing, which included expansive factual findings not included in the draft minutes.[6] At the July

---

[5] The Honorable David M. Reddy of the Walworth County Circuit Court presiding. Moreschi filed her complaint pursuant to Wis. Stat. § 801.02(5).

[6] In the approved minutes, the Board's findings read:

31 meeting, the Board also issued a signed, written document titled "Determination Form." The Determination Form reiterated the factual findings from the approved minutes and included specific conclusions on each of the five conditions required under ETZ Ord. § 18.1716(H):

> The Board found beyond a reasonable doubt that: (1) the requested variance is consistent with the purpose and content of the regulations for the district and a permitted use—a single family residence; (2) exceptional circumstances exist re: the location of the septic system on the lot and a 12% slope on the lot justifying the requested variance; (3) economic hardship is not the basis for granting the variance; (4) the variance is necessary to preserve the property rights and enjoyment of the property by the owner who looks to build a single family home on the property that is consistent with other homes in the district; and (5) the variance will not create a substantial detriment to the adjacent properties because the new home will be set back further from the property lines than the pre-existing home.

---

The Village of Williams Bay Extraterritorial Zoning Board of Appeals having considered all of the testimony and evidence presented at the hearing found beyond a reasonable doubt that all of the facts and conditions set forth in ETZ Zoning Ordinance Sec. 18.1716(H) exist in favor of granting the requested variance. The Board reviewed the application for variance and attached documents; letter from Town of Linn approving the variance; letters from citizens in favor and opposed to the variance; documents presented by Attorney Thompson; along with other documents presented at the hearing. The Board heard testimony from Mr. Edwards and his attorney, Mara Spring re: why the variance was necessary. The Board heard testimony from citizens in favor and opposed to the variance, including Attorney Thompson on behalf of Ms. Moreschi.

That same day, both the approved minutes and the Determination Form were filed in the Board's office.[7]

¶9   The day after the Board's July 31 meeting, the Board submitted the certiorari record to the circuit court. The record contained the approved minutes, the Determination Form, a recording of the May 23 hearing, the Edwardses' variance application, and documents the parties presented at the May 23 hearing. Following briefing and a hearing, the circuit court affirmed the Board's decision granting the Edwardses a variance.

¶10   Moreschi appealed the circuit court's decision on both procedural and substantive grounds. Her procedural claim was that the Board violated her due process rights when it included the approved minutes and Determination Form in the certiorari record. She maintained that the circuit court should have reviewed only the documents that existed at the time she filed for a writ: the transcript of the May 23 hearing and the draft minutes. As for Moreschi's substantive claim, she argued that the Board made its decision under the incorrect theory of law because at the time she filed for a writ, the Board had not explicitly found beyond a

---

[7] The record is unclear regarding when the Determination Form and the approved minutes were filed in the Board's office. The record indicates that the Board issued both documents at its July 31, 2017 meeting. It also shows that the Williams Bay Zoning Administrator included both documents in the certiorari record that was delivered to the circuit court on August 1. At oral argument, the Board explained that the Zoning Administrator could not have included the documents in the certiorari record unless they were filed in the Board's office. We therefore accept July 31, 2017, as the date the Determination Form and the approved minutes were filed in the office of the Board.

7

reasonable doubt that the Edwardses' variance met the five conditions set forth in ETZ Ord. § 18.1716(H).

¶11 The court of appeals rejected both of Moreschi's claims. Moreschi v. Vill. of Williams Bay and Town of Linn ETZ Zoning Bd. of Appeals, No. 2018AP283, unpublished slip op. (Wis. Ct. App. July 31, 2019). The court of appeals held that the Determination Form was the Board's decision that was filed in the office of the Board for purposes of triggering certiorari review. In reaching its conclusion, the court of appeals determined that only the Determination Form could be both filed as set forth in Wis. Stat. § 62.23(7)(e)10. and signed and transmitted to the applicant or appellant as required by ETZ Ord. § 18.1716(J). It also held that the Board did not violate Moreschi's due process rights by including the Determination Form and approved minutes in the certiorari record because Moreschi had no right to certiorari review until after the Determination Form was filed. Lastly, the court of appeals rejected Moreschi's substantive challenge, holding that the Board's findings on the requisite five conditions as stated in the Determination Form were "reasonable and supported by the evidence." Id., ¶¶22-27.

¶12 On appeal to this court, Moreschi raises three issues: (1) whether the court of appeals properly determined what constitutes the "triggering event" for purposes of appealing the Board's decision on a writ of certiorari; (2) whether her due process rights were violated by the inclusion of the Determination Form and approved minutes in the certiorari record; and (3) whether

the Board failed to follow the correct theory of law in granting the Edwardses' variance request.

## II. STANDARD OF REVIEW

¶13 To determine what constitutes the triggering event for purposes of certiorari review, we must engage in statutory interpretation. Statutory interpretation is a question of law that we review de novo. Myers v. DNR, 2019 WI 5, ¶18, 385 Wis. 2d 176, 922 N.W.2d 47. Statutory interpretation begins with the language of the statute and if it "yields a plain [and] clear" meaning, there is no need to consult extrinsic sources. State ex rel. Kalal v. Circuit Ct. for Dane Cty., 2004 WI 58, ¶¶45–46, 271 Wis. 2d 633, 681 N.W.2d 110. When interpreting the meaning of a specific statutory term, we "focus primarily on the language" itself and give that term its "common, ordinary, and accepted meaning," unless the statute provides a special or technical definition. Id., ¶¶44–45, 53. We interpret a statute "in the context in which it is used" and in such a way "to give reasonable effect to every word, in order to avoid surplusage." Id., ¶46.[8]

¶14 The question of whether the Board violated Moreschi's due process rights by including the Determination Form and the approved minutes in the certiorari record is a question of law that we review de novo. See State v. Sorenson, 2002 WI 78, ¶25, 254 Wis. 2d 54, 646 N.W.2d 354.

---

[8] To the extent that we must also interpret ETZ Ord. § 18.1716, we do so under the same rules as when we interpret a statute. See Stoker v. Milwaukee Cty., 2014 WI 130, ¶17, 359 Wis. 2d 347, 857 N.W.2d 102 ("The rules for statutory interpretation apply to our interpretation of an ordinance.").

¶15 Statutory certiorari review is limited to, among other considerations, whether the Board "proceeded on a correct theory of law."[9] State ex rel. Ziervogel v. Washington Cty. Bd. of Adjustment, 2004 WI 23, ¶14, 269 Wis. 2d 549, 676 N.W.2d 401. This is also a question of law that we review de novo. Id. "A board proceeds under a correct theory of law when it relies on the applicable ordinances . . . and applies them properly." Edward Kraemer & Sons v. Sauk Cty. Bd. of Adjustment, 183 Wis. 2d 1, 8-9, 515 N.W.2d 256 (1994).

## III. ANALYSIS

¶16 Moreschi urges us to hold that the triggering event for certiorari review occurred either immediately after the Board orally voted at the May 23, 2017 hearing or when she received the Board's draft minutes of that hearing on June 28, 2017. She claims that Wis. Stat. § 62.23(7)(e)3. and ETZ Ord. § 18.1716(C)(2) support her position because they require the Board to "immediately" file its minutes "showing the vote of each member upon each question."[10] She points to ETZ Ord. § 18.1716(H), which

---

[9] The other considerations, which are not at issue in this case, are whether the Board kept within its jurisdiction, whether its action was arbitrary or unreasonable, and whether its decision is reasonably based on the evidence. State ex rel. Ziervogel v. Washington Cty. Bd. of Adjustment, 2004 WI 23, ¶14, 269 Wis. 2d 549, 676 N.W.2d 401.

[10] Wisconsin Stat. § 62.23(7)(e)3. provides, in relevant part:

> The board shall keep minutes of its proceedings, showing the vote of each member upon each question, or, if absent or failing to vote, indicating such fact, and shall keep records of its examinations and other official actions,

10

requires the Board's minutes to indicate that the Board found beyond a reasonable doubt that all variance requirements were present.[11] Moreschi further relies upon ETZ Ord. § 18.1716(J), which states that the Board "shall decide all appeals and applications within thirty (30) days after the final hearing and shall transmit a signed copy of the Board's decision to the appellant or applicant." Moreschi also asserts that the Board violated her due process rights by "supplementing" the certiorari record with the approved minutes and the Determination Form after she had filed her certiorari petition. Lastly, she claims that the Board proceeded under an incorrect theory of law because the draft minutes do not contain the findings of fact necessary to grant a variance under ETZ Ord. § 18.1716(H).

---

all of which shall be immediately filed in the office of the board and shall be a public record.

ETZ Ord. § 18.1716(C)(2) reads as follows:

Minutes of the proceedings and a record of all actions shall be kept by the secretary, or other designated person, showing the vote of each member upon each question, the reasons for the Board's determination, and its findings of facts. These records shall be immediately filed in the office of the Board and shall be a public record.

[11] The text of ETZ Ord. § 18.1716(H) is as follows:

No variance to the provisions of this Ordinance shall be granted by the Board unless it finds beyond a reasonable doubt that all of the following facts and conditions exist and so indicates such in the minutes of its proceedings.

¶17 The Board counters that certiorari review was triggered on the date the Board filed the Determination Form and the approved minutes of the May 23 hearing. The Board issued both documents at its July 31 meeting and it submitted the certiorari record to the circuit court the next day. Therefore, the Board argues, both documents were properly included as part of the certiorari record. The Board further claims that it made its decision under the correct theory of law because both the Determination Form and the approved minutes reflect all findings of fact and legal conclusions required under Wis. Stat. § 62.23(7)(e) and ETZ Ord. § 18.1716(H).

¶18 We agree with the Board that the filing of the Determination Form was the triggering event for Moreschi's right to certiorari review. Accordingly, we conclude that Moreschi's due process rights were not violated by the Board's inclusion of the Determination Form and the approved minutes in the certiorari record. We also decide that the Board applied the correct theory of law in its decision to grant the Edwardses a variance as reflected in the Determination Form.

A. The Certiorari-Triggering Event

¶19 Moreschi's appeal turns on our interpretation of Wis. Stat. § 62.23(7)(e)10.,[12] which allows any person "aggrieved by any decision of the board of appeals" to commence an action seeking certiorari review "within 30 days after the filing of the decision

---

[12] We do not address Moreschi's arguments that rely on the ETZ Ordinances because that reliance is misplaced. Nothing in those ordinances affects the criteria for triggering certiorari review under Wis. Stat. § 62.23(7)(e)10. and our interpretation of that statute fully resolves the certiorari-triggering question.

in the office of the board of appeals."  Specifically, we must determine what constitutes the filing of the Board's decision for purposes of certiorari review.

¶20  We first observe that the "filing of the decision" must mean something more than the Board's oral decision to grant the Edwardses a variance.[13]  We must give effect to every word of Wis. Stat. § 62.23(7)(e)10. and the statutory text makes clear that certiorari review is triggered by the filing of the decision, not the decision itself.  See State v. Matasek, 2014 WI 27, ¶¶17-19, 353 Wis. 2d 601, 846 N.W.2d 811.  Focusing on the statutory text, our next step is to define "filing."

¶21  Wisconsin Stat. § 62.23 contains no special or technical definition of "filing."  Absent a technical definition, we turn to the dictionary definition of "filing" for its common and accepted meaning.  See Kalal, 271 Wis. 2d 633, ¶53 (explaining that a word's ordinary meaning is "ascertainable by reference to [its] dictionary definition").  The common dictionary definitions of "filing" suggest that only tangible things may be filed.  See Filing, Black's Law Dictionary (11th ed. 2019) ("submitting or lodging a document with a court clerk or record custodian" (emphasis added)); File, Webster's Third New International

---

[13] We have previously held that a board may render its decision either orally or in writing.  See Lamar Cent. Outdoor, Inc. v. Bd. of Zoning Appeals, 2005 WI 117, ¶¶31-35, 284 Wis. 2d 1, 700 N.W.2d 87.  Here, the Board decided to grant the Edwardses' variance at the May 23 hearing when, after gathering evidence, it voted on the Edwardses' variance request.  See Decision, Black's Law Dictionary (11th ed. 2019) (defining "decision" as a "determination after consideration of the facts and law.").

Dictionary of the English Language 849 (2002) ("to deliver (as a legal paper or instrument) . . . to the proper officer" (emphasis added)). Therefore, the "filing of the decision in the office of the Board" must be the delivery of a document to the Board's office that states the Board's decision.

¶22 The parties present three possibilities for what may constitute the filing of the Board's decision: the Board's oral vote, the minutes of the May 23 hearing (draft or approved), and the Determination Form. Given the above definition of "filing," the Board's oral vote cannot be the filing of its decision. It is neither a tangible thing nor a document. The oral vote simply cannot be filed.

¶23 As for the minutes, they are a tangible document, but the language of the surrounding statutory provisions suggests that they are something different than the filing of the decision. See United States v. Sahm, 2019 WI 64, ¶13, 387 Wis. 2d 259, 928 N.W.2d 545 ("Evaluation of the context of a statute is part of a plain-meaning analysis and includes review of the language of 'surrounding or closely-related statutes.'") (quoting Kalal, 271 Wis. 2d 633, ¶46). Under Wis. Stat. § 62.23(7)(e)(3)., the Board is required to "keep minutes of its proceedings, showing the vote of each member upon each question" and to file those minutes in its office. But § 62.23(7)(e)10. states that certiorari review is triggered by the filing of the Board's decision, not its minutes. In order to give meaning to every word in the statute, filing the minutes and filing the decision must refer to separate actions and separate documents. See Matasek, 353 Wis. 2d 601, ¶¶17-19.

14

Reading § 62.23(7)(e)10. to allow the filing of the minutes to trigger certiorari review would impermissibly strip the word "decision" of any independent meaning.  See id., ¶18.  Therefore, the filing of the minutes does not trigger certiorari review.

¶24  All of which leads us to the conclusion that the filing of the Determination Form is the filing of the Board's decision. The Determination Form checks all the requisite boxes for a filing of the decision:  it is a tangible document, it states the Board's decision, it was filed in the Board's office, and it is a separate document from the Board's minutes.  Therefore, Moreschi's right to certiorari review was triggered on July 31, 2017, when the Determination Form was filed in the office of the Board.

B.  Due Process

¶25 Because Moreschi's certiorari-review right was not triggered until the Board filed the Determination Form, there is no merit to her claim that she was denied due process by the inclusion of the Determination Form or the approved minutes in the certiorari record.  As the court of appeals explained, Moreschi's premature filing of her certiorari action did not preclude the Board from reducing its decision to writing so that the decision could be filed as required by law.  Nor did Moreschi's early filing cut off the Board's process for finalizing and approving its meeting minutes.  Indeed, as Moreschi points out, the certiorari record must contain the "official history of [the Board's] proceedings."  See State ex rel. Augusta v. Losby, 115 Wis. 57, 59, 90 N.W. 188 (1902).  Moreschi, however, provides no authority for the proposition that prematurely filing for a writ of

15

certiorari precludes the Board from developing its official history in accordance with its standard procedures. And nothing in the record indicates the Board deviated from those procedures when it issued the Determination Form and the approved minutes at its next meeting.

¶26 We also reject Moreschi's argument that the Determination Form constituted a "new decision." The Board's decision was to grant the Edwardses a variance; that decision remains unchanged in the Determination Form. The Determination Form simply reduced the Board's decision to writing so that the decision could be filed as required by Wis. Stat. § 62.23(7)(e)10. Thus, both the Determination Form and the approved minutes are properly part of the certiorari record and Moreschi's due process claim is without merit.

## C. Correct Theory of Law

¶27 Finally, we conclude that the Board reached its decision under the correct theory of law. "A board proceeds on a correct theory of law when it relies on the applicable ordinances . . . and applies them correctly." Edward Kraemer & Sons, 183 Wis. 2d 1, 8-9 (emphasis added). ETZ Ord. § 18.1716(H) provides that the Board "shall grant no variance" unless it finds "beyond a reasonable doubt" that five conditions are satisfied. In the Determination Form, the Board recounted the relevant facts, applied those facts, and concluded that each of the five conditions in ETZ Ord. § 18.1716(H) were satisfied beyond a reasonable doubt. Thus, the Board relied on the correct ordinance and applied that ordinance

16

correctly.[14]  The Board therefore proceeded under the correct theory of law.  See id. at 8-9.

## IV.  CONCLUSION

¶28 We conclude that an aggrieved party's right to certiorari review under Wis. Stat. § 62.23(7)(e)10. is triggered when a written copy of a zoning board of appeals' decision is filed in the office of the board.  Moreschi's right to certiorari review was therefore triggered on July 31, 2017, the date the Determination Form was filed.  Accordingly, Moreschi suffered no due process violation when the Determination Form and approved minutes were included in the certiorari record.  Finally, we decide that the Board acted under the correct theory of law because its explanation in the Determination Form satisfies the requirements of ETZ Ord. § 18.1716.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[14] Although the Board did not discuss each condition on the record at the May 23, 2017 hearing, the record makes clear that the Board did not reach its decision until it heard presentations from both parties regarding each condition required under ETZ Ord. § 18.1716(H) as well as the appropriate burden of proof.  We cannot say, after reviewing the "whole record," that the Board's decision was not "reasonable based on the evidence before it."  See AllEnergy Corp. v. Trempealeau Cnty. Evn't & Land Use Comm'n, 2017 WI 52, ¶89, 375 Wis. 2d 329, 895 N.W.2d 368.  Therefore, we must uphold the Board's decision.  See Ziervogel, 269 Wis. 2d 549, ¶13.

17

¶29 ANNETTE KINGSLAND ZIEGLER, J. *(concurring).* I agree with the majority opinion's conclusions in this case and its analyses of Moreschi's due process and certiorari review challenges. However, I do not join the majority's analysis of Wis. Stat. § 62.23(7)(e)10. in full because the majority inexplicably concludes that minutes of a board's meeting may never serve as a triggering event under § 62.23(7)(e)10. As I explain below, a board's minutes may also meet the statutory prerequisites for certiorari review. While I write separately as to the proper interpretation of § 62.23(7)(e)10., I reach the same conclusion as the majority——the filing of the Determination Form is the triggering event in this case. As a result, I respectfully concur, and I join all of the majority opinion except ¶¶23-24.

## I. ANALYSIS

### A. Filing an Oral Decision and Minutes

¶30 While I agree with the majority that the Determination Form is the triggering event in this case, I disagree with its broad statements about a board's minutes. As such, I write separately to demonstrate that the minutes can serve as a filed decision for purposes of Wis. Stat. § 62.23(7)(e)10.

¶31 A board's oral vote alone cannot serve as the triggering event. Cf. Helmrick v. Helmrick, 95 Wis. 2d 554, 556, 291 N.W.2d 582 (Ct. App. 1980) (denying appeal from an oral ruling of a circuit court). However, if that oral vote is reduced to writing and filed in the office of the board, then it is sufficient to serve as a triggering event under Wis. Stat. § 62.23(7)(e)10. As required by statute, the minutes of a board must "show[] the vote of each member upon each question." § 62.23(7)(e)3. That means

1

that the statute requires that any oral votes of a board be reduced to writing in the minutes. Accordingly, if those minutes are filed in the office of the board, then they can sufficiently serve as the triggering event under § 62.23(7)(e)10.

¶32 This is consistent with how we treat appeals of oral orders of circuit courts. See Wis. Stat. § 808.03(1). This court has long recognized "that oral orders, although effective as soon as they are announced, must nevertheless be reduced to writing before an appellate court may have jurisdiction to review them." State v. Malone, 136 Wis. 2d 250, 257, 401 N.W.2d 563 (1987). Those oral orders, reduced to writing, must then be "filed in the office of the clerk of court." Wis. Stat. § 807.11(2). Once an oral order is "filed in the office of the clerk of court," the order is entered and appealable. § 808.03(1). Appeals of final orders are similar to certiorari review of a board's decision because they both seek relief from a decision. Compare Wis. Stat. § 808.03(1) ("[A] final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law.") with Wis. Stat. § 62.23(7)(e)10. ("Any person . . . aggrieved by any decision of the board of appeals . . . may . . . commence an action seeking the remedy available by certiorari."). Accordingly, like an appeal of an oral order of a circuit court, an oral vote of a board, reduced to writing in the minutes and filed in the office of the board, can serve as the triggering event for § 62.23(7)(e)10.

¶33 The majority disagrees and states that, "[i]n order to give meaning to every word in the statute, filing the minutes and filing the decision must refer to separate actions and separate

2

documents." Majority op., ¶23. While it is true that the filing of minutes and the filing of a decision can be separate actions and separate documents, they can occur simultaneously in the filing of the same document in the office of the board.[1] The board, regardless of whether a vote is taken at a meeting, must still file the minutes. Wis. Stat. § 62.23(7)(e)3. Similarly, the board can, as it did here with the Determination Form, file a decision in the office of the board without any minutes. Thus, the filing of minutes and the filing of a decision are clearly separate actions. Notwithstanding the fact that they are separate actions, the filing of the minutes can serve as the filing of the decision if the minutes contain "the vote of each member upon each question." § 62.23(7)(e)3.

¶34 The majority claims that "allow[ing] the filing of the minutes to trigger certiorari review would impermissibly strip the word 'decision' of any independent meaning." Majority op., ¶23. The majority is incorrect. There will be occasions where the minutes do not contain a decision——for example, if a board defers

---

[1] This conclusion is consistent with the language of the statute. The only time the phrase "in the office of the board" appears in the statute is in reference to the filing of the minutes and the filing of a decision. Compare Wis. Stat. § 62.23(7)(e)3. ("all of which shall be immediately filed in the office of the board . . . ." (emphasis added)) with § 62.23(7)(e)10. ("after the filing of the decision [of the board] in the office of the board of appeals . . . ." (emphasis added)). Reading these two provisions together, the legislature used the exact same phrase indicating that these two separate actions could occur simultaneously. If the majority's position stands, it would render these two provisions in conflict, contrary to our duty to construe statutes harmoniously. See State v. Hemp, 2014 WI 129, ¶29, 359 Wis. 2d 320, 856 N.W.2d 811 (applying the harmonious reading canon).

voting on the matter to a later meeting. Similarly, there will be occasions where a board issues a decision outside of a meeting——as the Board did in this case with the Determination Form. As such, allowing the minutes to serve as the triggering event does not strip "decision" of any independent meaning.

¶35 Therefore, under the plain text of the statute, minutes of a board's meeting can serve as a triggering event for Wis. Stat. § 62.23(7)(e)10., if the minutes meet the two statutory prerequisites: a decision and that decision is filed in the office of the board.

### B. The Triggering Event Here

¶36 While I disagree with majority's analysis of Wis. Stat. § 62.23(7)(e)10., I agree with the conclusion that the Determination Form serves as the triggering event in this case. The parties argue about which of three actions may serve as the triggering event in this case: the oral vote at the May 23 meeting, the draft minutes of the May 23 meeting, or the Determination Form with the approved minutes.[2] Applying the two statutory prerequisites, only the Determination Form with approved minutes may serve as the triggering event for § 62.23(7)(e)10.

¶37 Neither the oral vote at the May 23 meeting nor the draft minutes of the May 23 meeting may serve as the triggering event under Wis. Stat. § 62.23(7)(e)10. As I explained above, the oral vote alone cannot serve as the triggering event. The majority correctly points out that an oral vote "is neither a tangible thing nor a document" that can be filed. Majority op., ¶22. However,

---

[2] Because the Determination Form and the approved minutes were filed simultaneously, I refer to them as one collective document.

4

Moreschi argues that the board's draft minutes that she received on June 28, 2017, are the triggering event in this case. Despite my conclusion above that minutes may serve as the triggering event, Moreschi failed to show that such minutes were filed in the office of the board. She argues that because the board was required to file the minutes under § 62.23(7)(e)3. and Village of Williams Bay Extraterritorial Zoning Ordinance § 18.1716(C)(2), the draft minutes must serve as the triggering event. While the filing of the minutes could normally serve as the triggering event, nothing in the record supports the conclusion that the draft minutes were actually filed in the office of the board, as the statute requires. As such, the draft minutes of the May 23 meeting cannot serve as the triggering event for certiorari review under § 62.23(7)(e)10.[3]

¶38 Thus, in this case, the triggering event must be the Determination Form with the approved minutes. Both the Determination Form and the approved minutes contain the board's decision to grant the Edwards' variance request, satisfying the first statutory prerequisite. As the board acknowledges, these documents were filed in the office of the board on July 31, 2017, satisfying the second statutory prerequisite. Accordingly, the Determination Form with the approved minutes meet the two statutory prerequisites of Wis. Stat. § 62.23(7)(e)10. and serve as the triggering event in this case.

## II. CONCLUSION

---

[3] If Moreschi wished to compel the board to file the minutes, she could have filed an action in mandamus in the circuit court to compel the board to file the minutes. See State ex. rel. Milwaukee Cnty. Pers. Rev. Bd. v. Clarke, 2006 WI App 186, ¶40, 296 Wis. 2d 210, 723 N.W.2d 141.

5

¶39 I agree with the majority opinion's conclusions in this case and its analyses of Moreschi's due process and certiorari review challenges. But I do not join the majority's analysis of Wis. Stat. § 62.23(7)(e)10. in full because the majority inexplicably concludes that minutes of a board's meeting cannot serve as a triggering event under § 62.23(7)(e)10., even though the minutes can meet the statutory prerequisites for certiorari review. While I write separately as to the proper interpretation of § 62.23(7)(e)10., I reach the same conclusion as the majority——the filing of the Determination Form is the triggering event in this case. As a result, I respectfully concur, and I join all of the majority opinion except ¶¶23-24.

¶40 For the foregoing reasons, I respectfully concur.

¶41 I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.

6

¶42 REBECCA GRASSL BRADLEY, J. (*dissenting*). The Board violated its own governing ordinance and then altered its minutes, adding findings that were never made during the hearing. The majority overlooks these unlawful and improper acts.[1] I cannot. I respectfully dissent.

I

¶43 The Village of Williams Bay enacted Ordinance § 18.1700, the "Extraterritorial Zoning Ordinance for the Village of Williams Bay."[2] Section 18.1701C details the "INTENT" of the ordinance, which, as material, provides:

> It is the general intent of this ETZ Ordinance to regulate and restrict the use of all structures, lands, and waters; . . . and regulate and restrict size and location of all structures so as to; lessen congestion . . .; secure safety from fire, flooding, panic, and other dangers; provide adequate light, air sanitation and drainage; prevent overcrowding; avoid undue population concentration; protect property values; further the appropriate use of land and conservation of natural resources[.]

The ordinance then sets forth all the rules for each zoning district based on the classification of property. As applicable to the Edwardses' property, the ordinance requires a Single-Family Residence to be placed at a "[m]inimum 25 feet" from the rear property line and at a "[m]inimum 15 feet" from the side property line. Ord. § 18.1703M(D).

---

[1] I use the term "majority" to refer collectively to the lead and concurring opinions.

[2] Williams Bay Ordinance § 18.1700 may be viewed at https://www.williamsbay.org/#ordinances (last accessed on Nov. 23, 2020) (all caps omitted).

¶44 The ordinance created the "Zoning Board of Appeals for each Extraterritorial Zoning District" for the "purpose of hearing appeals and applications and for granting variances[.]" Ord. § 18.1716(A). This section also establishes the rules the Zoning Board must follow and directs that the Zoning Board's minutes "shall be kept" "showing the vote of each member upon each question, the reasons for the Board's determination, and its findings of facts." Ord. § 18.1716(C)(2). The ordinance prohibits the Zoning Board from granting a variance "unless it finds beyond a reasonable doubt that all of the following facts and conditions exist and so indicates in the minutes of its proceedings." As pertinent to the variance sought by the Edwardses, Ordinance § 18.1716(H) provides:[3]

---

[3] Ordinance § 18.1716(H) contains a sixth factor in subsection (F) applicable only to C-4 ETZ Districts, the purpose of which "is to preserve, protect, and enhance the lakes, streams, and wetland areas in the ETZ Zoning District." Ordinance § 18.1703J. That factor provides:

> (F) Additional Requirements in C-4 ETZ Districts: No variance shall be granted where:
>
> (A) Filling and development contrary to the purpose and intent of the C-4 ETZ District would result.
>
> (B) A change in the boundaries of the C-4 ETZ District would result.
>
> (C) A lower degree of flood protection that a point two (2) feet above the 100-year recurrence interval flood for the particular area would result.
>
> (D) Any action contrary to the provisions of Chapter NR-116 of the Wisconsin Administrative Code would result.

2

No variance to the provisions of this Ordinance <u>shall be granted</u> by the Board <u>unless</u> it finds beyond a reasonable doubt that <u>all</u> of the following facts and conditions exist <u>and so indicates such in the minutes of its proceedings</u>.

(A) Preservation of Intent: No variance shall be granted that is not consistent with the purpose and intent of the regulations for the district in which the development is located. No variance shall have the effect of permitting a use in any district that is not a stated permitted use, accessory use, or conditional use in that particular district.

(B) Exceptional Circumstances: There must be exceptional, extraordinary, or unusual circumstances or conditions applying to the lot or parcel, structure, use, or intended use that do not apply generally to other properties of uses in the same district, and the granting of the variance should not be of so general or recurrent nature as to suggest that this Ordinance should be changed.

(C) Economic Hardship and Self-Imposed Hardship Not Grounds for Variance: No variance shall be granted solely on the basis of economic gain or loss. Self-imposed hardships shall not be considered as grounds for the granting of a variance.

(D) Preservation of Property Rights: The variance must be necessary for the preservation and enjoyment of substantial property rights possessed by other properties in the same district and same vicinity.

(E) Absence of Detriment: No variance shall be granted that will create substantial detriment to adjacent property or that will materially impair or be contrary to the purpose and spirit of this Ordinance or the public interest.

(Emphasis added.)

¶45 The record contains the transcript of the Zoning Board's May 23, 2017 hearing. It is undisputed that <u>during the hearing</u> no

---

None of the parties claim that the Edwardses' property is located in a C-4 ETZ Lowland Reserve Conservation District.

3

member of the Board expressed any finding "beyond a reasonable doubt" nor addressed the five findings required by the ordinance. The transcript reveals exactly what occurred:

- The Edwardses' attorney explained they wanted a variance due to the 12 percent slope of their lot; because of the slope, the septic system needed to be in a certain spot, limiting where the home could be built.

- Board Chairman Richard Tuma asked if there were any questions.

- Board member Vernon Choyce asked whether the septic could be a mound system instead; Mr. Edwards answered they were told the preferred system for sanitation was "in ground."

- Several neighbors stated they were in favor of the variance.

- Moreschi's attorney relayed the history of the case, outlined the legal requirements the Edwardses needed to prove to secure the variance, and discussed with the Board whether the file was missing paperwork upon which the Town of Linn Plan Commission had conditioned its approval.

- Board member Robert Winter asked Moreschi's attorney what he meant when he said granting a variance would be "against the law" and counsel explained the variance would be against the law unless the Board would find that the five ordinance factors were proven beyond a reasonable doubt.

- There was some discussion about the packet of documents Moreschi provided to the Board at the last minute, whether the ordinance reflecting the five factors was contained

4

within the packet, whether the Town of Linn actually approved or merely recommended a variance and whether it did so without actually receiving the proper documentation.

- Moreschi spoke at length about why she opposed the variance.

- Several other people spoke in opposition to granting the variance.

- The Edwardses' lawyer responded to some of the comments opposing the variance, argued that the five factors were satisfied, and addressed the burden of proof.

- Mr. Edwards spoke, expressing it was not his intent to cause dissension in the community and discussing his investment in building his home.

- Two more people spoke generally about the neighborhood and the changes happening there.

- Moreschi told the Board that Mr. Edwards said he needed a variance in order to preserve the old trees, but since his trees had died, the space available on his lot had changed.

- Moreschi's attorney apologized for not providing the packet of information to the Board earlier, explaining the timing was connected to the public notice date for the hearing.

- An individual suggested the Board hold off on issuing a decision until it could ask the Town of Linn to determine whether it had in fact received the information upon which it had conditioned its approval.

- Board member Choyce asked the Building Inspector about the Inspector's letter referring to the 12 percent slope in

5

which he "said the remaining four items do not apply." Choyce explained he did not "know what the remaining four items are." The building inspector responded that he would "strike that last sentence" in his letter.[4]

- Chairman Tuma then attempted to call for a vote on the variance request, but Board member Winter asked if there could be "some discussion first[.]" Winter then mentioned he lives in the Town of Linn——in the same subdivision involved——and how the area is changing, "[s]o what we do today might have a lot of impact upon what's gonna happen in the future."

- Board member Mike O'Brien said it seems like the Board keeps trying to move forward with a decision on this but keeps discussing the same topics.

- Board member Choyce said "the only thing that I see is the exceptional circumstances." He said that he has built homes in that subdivision and suggested using a mound system would make everything work: "I've built in Knollwood and put a house on a lot that had a significant slope for a client, we were able to make everything work and inclusive of the septic system by doing mounds. So everybody's talked about holding tanks and regular septic systems, but I haven't heard a soul talk about a mound

---

[4] This discussion during the hearing appears to relate to the Building Inspector's letter discussing conditions on the lot that may provide a topographical basis to satisfy the exceptional circumstances requirement for the variance. This does not refer to the five ordinance factors.

6

system, so I'm not certain I see that there's an exceptional circumstance that the home, uh, be approved." Choyce expressed not knowing how to deal with the fact that the variance request came so late——after the foundation had already been put in: "I would've thought this would've all been done ahead of time. Um, but I'm not sure how to get around that."

- Chairman Tuma then immediately asked for a motion to approve, which Winter made, and Tuma seconded. Then Tuma said: "All those in favor, signify by saying 'aye,'" and all four Board members simultaneously said "aye."

¶46 Aside from Choyce's concern about the exceptional circumstance factor, none of the Zoning Board's four members discussed or even mentioned any of the five required ordinance factors. Additionally, not a single Board member acknowledged the burden of proof each member was required to apply. Although the lawyers presented argument on the five ordinance factors as well as the burden of proof, the Board members simply voted "aye" as a group to granting the variance, without discussing or mentioning the required findings and without stating that each had been proven beyond a reasonable doubt. The original minutes from the May 23, 2017 meeting, which were sent to Moreschi on June 28, 2017, provided:

**Consider Variance**

Williams and Susan Edwards, W4247 Indian Drive, Lake Geneva, WI 53147 (Linn Township), Tax Key ICI-160

The petitioner is requesting a variance to zoning code section 18.1703M(D) to allow a rear yard setback of 18'

7

(25' required) and a side yard setback of 6' (15' required).

**Board of Appeals Decision:** The Village of Williams Bay Extraterritorial Zoning Board of Appeals, during the meeting of March 23, 2017 for the petition of Williams and Susan Edwards requesting a variance to the zoning code section 18.1703M(D) to allow a rear yard setback of 18' (25' required) and a side yard setback of 6' (15' required). Robert Winter moved to APPROVE the request. Richard Tuma seconded the motion. A vote was taken and carried unanimously by those present. 4 – AYE (Richard Tuma, Vernon Choyce, Mike O'Brien, Robert Winter), 0 – NAY. The request was APPROVED.

**Board of Appeals Findings:**

The Village of Williams Bay Extraterritorial Zoning Board of Appeals felt that there was a lack of detriment and allowed the variance.

¶47 After Moreschi filed her certiorari action in the circuit court seeking reversal because the Zoning Board did not make the required findings at the hearing (beyond a reasonable doubt or otherwise), someone on the Zoning Board's behalf rewrote the minutes and prepared a written Determination form. These new minutes, which the Board calls the "official" or "approved" minutes, were released on August 1, 2017, 70 days after the Board's oral decision:

**Consider Variance**

Williams and Susan Edwards, W4247 Indian Drive, Lake Geneva, WI 53147 (Linn Township), Tax Key ICI-160

The petitioner is requesting a variance to zoning code section 18.1703M(D) to allow a rear yard setback of 18' (25' required) and a side yard setback of 6' (15' required).

**Board of Appeals Decision:** A motion was made by Robert Winter to approve the variance requested by William and Susan Edwards to zoning code section 18.1703M(D) to allow a rear yard setback of 18' and north side lot set

8

back of 6'. The motion was seconded by Richard Tuma. A vote was taken and the motion carried unanimously. 4 - Aye (Richard Tuma, Vernon Choice, Mike O'Brien, Robert Winter), 0- Nay. The variance was granted.

**Board of Appeals Findings**: The Village of Williams Bay Extraterritorial Zoning Board of Appeals having considered all of the testimony and evidence presented at the hearing found beyond a reasonable doubt that all of the facts and conditions set forth in ETZ Zoning Ordinance Sec. 18.1716(H) exist in favor of granting the requested variance. The Board reviewed the application for variance and attached documents; letter from Town of Linn approving the variance; letters from citizens in favor and opposed to the variance; documents presented by Attorney Thompson; along with other documents presented at the hearing. The Board heard testimony from Mr. Edwards and his attorney, Mara Spring re: why the variance was necessary. The Board heard testimony from citizens in favor and opposed to the variance, including Attorney Thompson on behalf of Ms. Moreschi.

¶48 The four members of the Board who were present at the May 23, 2017 hearing subsequently signed and issued a written decision, titled "Determination Form" and dated July 31, 2017. The Determination Form explicitly references all five ordinance factors and the proper burden of proof:

The Village of Williams Bay Extraterritorial Zoning Board of Appeals having considered all of the testimony and evidence presented at the hearing finds beyond a reasonable doubt that all of the facts and conditions set forth in ETZ Zoning Ordinance Sec. 18.1716(H) exist in favor of granting the requested variance. The Board reviewed the application for variance and attached documents; letter from Town of Linn approving the variance; letters from citizens in favor and opposed to the variance; documents presented by Attorney Thompson; along with other documents presented at the hearing. The Board heard testimony from Mr. Edwards and his attorney, Mara Spring re: why the variance was necessary. The Board heard testimony from citizens in favor and opposed to the variance, including Attorney Thompson on behalf of Ms. Moreschi. The Board reviewed the Affidavit of the Walworth County Sanitarian. The Affidavit of the Sanitarian does not dispute the Edwards representations

9

re: the location of the septic system on their property. The affidavit indicates some possibilities re: other septic alternatives, but does not state that any of these alternatives can definitely be applied on the Edwards property. The Board found beyond a reasonable doubt that: (1) the requested variance is consistent with the purpose and content of the regulations for the district and a permitted use - a single family residence; (2) exceptional circumstances exist re: the location of the septic system on the lot and a 12% slope on the lot justifying the requested variance; (3) economic hardship is not the basis for granting the variance; (4) the variance is necessary to preserve the property rights and enjoyment of the property by the owner who looks to build a single family home on the property that is consistent with other homes in the district; and (5) the variance will not create a substantial detriment to the adjacent properties because the new home will be set back further from the property lines than the pre-existing home.

While the Board may control the drafting of the minutes, it cannot control the past; it is what it was and not what the Board says.

II

¶49  In reviewing the Zoning Board's decision, this court's review is limited to determining:

(1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question based on the evidence.

State ex rel. Ziervogel v. Washington Cnty. Bd. of Adjustment, 2004 WI 23, ¶14, 269 Wis. 2d 549, 676 N.W.2d 401.

¶50  The Zoning Board failed to proceed on a correct theory of law in considering the Edwardses' variance request.  The Board violated its own ordinance, which required it to make five findings beyond a reasonable doubt and on the record at the hearing before it had the authority to grant a variance.  The transcript of the

10

May 23, 2017, hearing reflects that the Board neither discussed nor made findings on the ordinance's five factors. Chairman Tuma let everyone who wanted to make a statement speak, and then he immediately called for a vote. Board member Winter asked for discussion time. During that discussion, Board member Choyce said he had not seen evidence of exceptional circumstances, but did not know what to do about that since the home's foundation had already been completed. Without any discussion of the five factors or any mention by any Board member of the burden of proof, a vote was taken and the variance was granted.

¶51 The ordinance governing the Board required it to deny any variance unless it (1) finds that five facts and conditions exist beyond a reasonable doubt; and (2) "so indicates such in the minutes of its proceedings." Ord. § 18.1716(H). In other words, the ordinance required the Board members to make findings beyond a reasonable doubt that "all of" the five "facts and conditions" are present before granting any variance. In violation of the ordinance, the Board instead granted the variance with no mention of the five factors, which are: (1) preservation of intent; (2) exceptional circumstances; (3) economic hardship cannot be the sole basis for the variance, nor can self-imposed hardship be considered as grounds for granting a variance; (4) preservation of property rights; and (5) absence of detriment. If the Board makes those five findings at the hearing, they must be noted in the minutes. More importantly, if the Board neglects to make any of these findings at the hearing, logically they cannot be indicated

11

in the minutes of the proceedings and the variance cannot be granted.

¶52 At the May 23rd hearing, not a single Board member made a finding on preservation of intent——at all——let alone to the beyond a reasonable doubt standard. Not a single Board member found that the Edwardses had proven the economic hardship, preservation of property rights, or absence of detriment factors either, and certainly not to the proper burden. Only one Board member seemingly found that this property did not present exceptional circumstances, but the Board itself did not address this finding and the Board member ultimately ignored it when he voted to grant the variance. This is a direct violation of the Board's own ordinance.

¶53 Although the ordinance requires the Board to include its findings in the minutes, the Board failed to meet this requirement too. The governing ordinance requires that "Minutes of the proceedings and a record of all actions shall be kept by the secretary, or other designated person, showing the vote of each member upon each question, the reasons for the Board's determination, and its finding of facts." Ord. § 18.1716(C)(2). Minutes are a record of what happens at a hearing. Minutes, Black's Law Dictionary (11th ed. 2019) ("Memoranda or notes of a transaction, proceeding, or meeting."). They are "[a]n official record of the proceedings of a meeting." Minutes, The American Heritage Dictionary (5th ed. 2011). Minutes, therefore, cannot contain things that did not actually happen at the meeting. Despite this fundamental characteristic of meeting minutes, the

12

Board's "official" minutes contain things that did not even occur at the meeting. The transcript expressly shows the falsification of the minutes. Of course, it is not unusual for minutes of a meeting to be circulated in a draft form first so that members of an organization may review the minutes to make corrections before they are finalized and approved. This process, however, cannot reinvent history; minutes must be limited to that which actually occurred at the hearing. The "official" minutes created by the Board do not reflect what really happened at the May 23rd hearing. Instead, the minutes contain content generated in reaction to Moreschi's certiorari petition.

¶54 The Board's "findings" in the "official" minutes say the Board "found beyond a reasonable doubt" that all of the ordinance's factors "exist." Board members never said anything close to this at the hearing. The findings section also refers to the Board having "heard testimony." To the contrary, no witnesses were sworn. People spoke informally, giving statements in favor of or against the variance. The rewritten minutes reflect a complete overhaul of the draft minutes to insert things that never happened in an attempt to rectify the Board's failure to comply with the ordinance's dictates.

¶55 The Board's fabrication of the "official" minutes highlights what the Board neglected to do, in violation of the ordinance. The "draft" minutes, which Moreschi obtained in June 2017, fare no better. Those minutes contain a single finding: "that there was a lack of detriment." No Board member, however, discussed the lack of detriment factor and no Board member made

13

any finding with respect to that factor. Those minutes do not reflect what occurred at the May 23rd hearing either.

¶56 Instead of following the mandates of its own ordinance, the Board granted the variance first and only after Moreschi filed her certiorari action did the Board perfunctorily recite the facts and conditions to justify what amounts to an unlawful exercise of its will and not its judgment.[5] The majority should have acknowledged what actually happened instead of ratifying the Board's acts. This court should have sent the matter back to the Board and directed it to follow its own ordinance. The Board's post hoc attempt to pretend it did what the ordinance required should not relieve it of its obligation to follow the law.

¶57 I would reverse the Board's decision granting the variance and remand the matter to the Board to act in accordance with the law. Even though this may have resulted in the Board simply reconvening on remand, stating the required findings on the record based on the proper burden of proof, and ultimately voting the same way, at least the Board would then have followed the law the Village of Williams Bay enacted. Local government must follow the law that binds it. When a zoning board blatantly violates its own rules, a court should not allow the decision to stand. Instead, the majority looks the other way without bothering to

---

[5] I agree with court of appeals Judge Paul Reilly, who concluded, in his dissent to the court of appeals opinion affirming the Board's decision, that "[t]he Board's manufactured 'decision' seventy days later——after it learned what it did was wrong via Moreschi's certiorari action——invented findings that were never made by the Board and violated due process and is not fair play." Moreschi v. Village of Williams Bay, No. 2018AP283, unpublished slip op., ¶35 (Wis. Ct. App. July 31, 2019).

14

address the Board's farcical if not mendacious procedures. The majority gives the Board a free pass to disregard its own governing laws. I will not, and I therefore respectfully dissent.